IN RE BYRD, A MINOR CHILD.

(No. 80-1349—Decided June 10, 1981.)

*Messrs. Stocker & Stocker* and *Mr. Ronald E. Stocker,* for appellee.

*Mr. Patrick L. Menicos* and *Mr. Thomas G. Bedall,* for appellant.

PAUL W. BROWN, J. In her first proposition of law, appellant contends that in an action for custody filed pursuant to R. C. 2151.23(A)(2),[1] the natural father of an illegitimate child is not entitled to equality of standing with the natural mother of such child absent his acknowledgment of the child under R. C. 2105.18, or adoption of the child pursuant to R. C. 3107.01 *et seq.,* or marrying the mother. In her second proposition of law, appellant contends that before the natural father may be awarded custody, absent a legitimation proceeding, the mother of an illegitimate child must be found to be unsuitable as a parent pursuant to *In re Perales* (1977), 52 Ohio St. 2d 89. For the reasons discussed below, we disagree with appellant's propositions of law, and we affirm the award of custody of the minor child to the father.

Appellant argues that not until the natural father has legitimated the child should he have equal standing with the mother with respect to custody. While we agree with appellant that legitimation of a child is always a preferred goal, we cannot agree that legitimation is a prerequisite for the natural father to have equality of standing with the mother in a R. C. 2151.23(A)(2) custody action. We reach this result for two reasons. First, there are three methods in Ohio by which a father can legitimate his child: (1) in an acknowledgment proceeding brought under R. C. 2105.18;[2] (2) by adopting the

---

[1] R. C. 2151.23(A) provides that:

"The juvenile court has exclusive original jurisdiction under the Revised Code:

"* * *

"(2) To determine the custody of any child not a ward of another court of the state."

In order to determine such right of custody, it is not necessary for the court to find first that the child is delinquent, neglected, or dependent. *In re Torok* (1954), 161 Ohio St. 585, paragraph two of the syllabus; *In re Perales* (1977), 52 Ohio St. 2d 89, 93-95.

[2] R. C. 2105.18 provides, in pertinent part, that:

"The natural father of a child may file an application in the probate court of the county in which he resides, in the county in which the child resides, or in the county in which the child was born, acknowledging that the child is his, *and upon consent of the mother,* or if she is deceased or incompetent, or has surrendered custody, upon the consent of the person or agency having custody of the child, or of a court having jurisdiction over the child's custody, the probate court, if satisfied that the applicant is the

child;[3] or (3) by marrying the mother.[4] All these methods require the consent of the mother, and therefore the mother can thwart any attempt by the natural father to legitimate the child. Our second reason for not requiring legitimation is that such a requirement would not necessarily be in the best interests of the child, and would, in fact, result in dissimilar treatment between legitimate and illegitimate children.

Under R. C. 3109.03, in a separation or divorce, parents "stand upon an equality as to the care, custody, and control of such offspring, so far as parenthood is involved." In addition, R. C. 3109.04(A) provides, in pertinent part, that: "Upon hearing the testimony of either or both parents and in accordance with sections 3109.21 to 3109.36 of the Revised Code, the court shall decide which of them shall have the care, custody, and control of the children, taking into account that which would be for their best interest * * *." Thus, because the General Assembly has determined that parents of a legitimate child stand equally before the court, the legitimate child has an equal right to live with his father. Moreover, because the court must consider equally the custody requests of both parents, the legitimate child has the right to be placed with the parent who can better care for him. If we held, as appellant requests, that the mother of an illegitimate child has a right, superior to that of the admitted natural father, to the custody of the illegitimate child, we would effectively be denying an illegitimate child the right to live with his father, and the right to be placed with the parent who can better care for him. We see no reason why an illegitimate child should not have the same right as a

_____

natural father, and that establishment of the relationship is for the best interest of the child, shall enter the finding of fact upon its journal, and thereafter the child is the child of the applicant, as though born to him in lawful wedlock." (Emphasis added.)

[3] R. C. Chapter 3107 governs adoption. R. C. 3107.06 provides, in pertinent part, that:

"Unless consent is not required under section 3107.07 of the Revised Code, a petition to adopt a minor may be granted only if written consent to the adoption has been executed by all of the following:

"(A) *The mother of the minor;*" (Emphasis added.)

[4] R. C. 2105.18 provides, in pertinent part, that:

"When a man has a child by a woman and before or after the birth intermarries with her, the child is legitimate. The issue of parents whose marriage is null in law are nevertheless legitimate."

legitimate child to live with his father, if the court determines to award custody to the father. An innocent child should not be made to suffer unnecessarily for the actions of his parents.

Appellant admits that appellee is Dawn's natural father. The parties lived together at the time Dawn was born, and continued to live together for approximately 20 months after her birth. Dawn lived with only her mother for approximately three months after the parties separated, but she has lived with her father since that time.[5] Thus it is clear that appellee has participated in Dawn's upbringing. He has admitted to all that he is her father and he has freely undertaken to support her.

We therefore hold that when the alleged natural father of an illegitimate child, who has participated in the nurturing process of the child, files a complaint seeking custody of the child under R. C. 2151.23(A)(2), and the mother admits that he is the natural father of the child, the natural father has equality of standing with the mother with respect to the custody of the child. In such a case, the court shall determine which parent shall have the legal custody of the child, taking into account what would be in the best interests of the child.[6]

---

[5] On July 24, 1980, appellee designated Dawn as his heir-at-law pursuant to R. C. 2105.15. That statute provides, in pertinent part, that:

"***[T]he person designated will stand in the same relation, for all purposes, to such declarant as he could if a child born in lawful wedlock. The rules of inheritance will be the same between him and the relations by blood of the declarant, as if so born.***"

Although such designation falls short of proper legitimation, it does manifest an intent on the part of appellee to do all he can for Dawn.

[6] The following definitions from R. C. 2151.011(B) are relevant when a court makes a custody award under R. C. 2151.23(A)(2):

"(10) 'Legal custody' means a legal status created by court order which vests in the custodian the right to have physical care and control of the child and to determine where and with whom he shall live, and the right and duty to protect, train, and discipline him and to provide him with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities. An individual granted legal custody shall exercise the rights and responsibilities personally unless otherwise authorized by any section of the Revised Code or by the court.

"(11) 'Residual parental rights, privileges, and responsibilities' means those rights, privileges, and responsibilities remaining with the natural parent after the transfer of legal custody of the person, including but not necessarily limited to the privilege of reasonable visitation, consent to adoption, the privilege to determine the child's religious affiliation, and the responsibility for support.

Because the admitted natural parent has standing as a parent, the principle enunciated by this court in *In re Perales, supra,* does not apply. In that case, the custody dispute was between a parent (the child's mother) and a non-parent (a woman in whose care the mother had left the child shortly after birth). The court held that an award of custody could not be made to the non-parent without the court first making a finding of parental unsuitability. Obviously, the fact situation in that case is much different from the one now before us. When the dispute is between the child's natural parents, the court shall be concerned primarily with what is in the best interests of the child.

In the recent case of *Pruitt* v. *Jones* (1980), 62 Ohio St. 2d 237, the fact situation is very similar to the one presented here. In *Pruitt* the Court of Appeals, in a habeas corpus action, summarily granted custody of an illegitimate child to its mother in a dispute with the natural father. The Court of Appeals had taken the fact of illegitimacy into account in finding the mother's right to present custody. This court reversed and remanded the cause, stating, at page 238: "We are unable to discern any difference between the present case, dealing with an illegitimate child, and a case dealing with a legitimate child. In both types of cases, when the controversy is between the child's natural parents, our main concern remains with the best interests of the child." The court pointed out that for over 125 years, the courts of Ohio have considered the best interests of the child as the primary concern in the custody ac-

"(12) 'Permanent custody' means a legal status created by the court which vests in the county department of welfare which has assumed the administration of child welfare, county children services board, or certified organization, all parental rights, duties, and obligations, including the right to consent to adoption, and divests the natural parents or adoptive parents of any and all parental rights, privileges, and obligations, including all residual rights and obligations."

When a court awards custody to any party not listed in R. C. 2151.011(B)(12) ("permanent custody"), it is awarding "legal custody" of the child as that term is defined in R. C. 2151.011(B)(10). The court retains continuing jurisdiction, and may modify its prior custody award or grant custody to another party if a change in circumstances makes it necessary. See *In re Perales, supra,* Paul W. Brown, J., dissenting.

Thus, in the instant cause, when the trial court awarded custody of Dawn to appellee, it was making a grant of "legal custody." As such, appellant retained her residual parental rights. This was recognized by the trial court when it ordered that the custody granted appellee was subject to reasonable visitation by appellant.

340

tion, citing *Gishwiler* v. *Dodez* (1855), 4 Ohio St. 615; *In re Cunningham* (1979), 59 Ohio St. 2d 100, 105; *In re Hua* (1980), 62 Ohio St. 2d 227.

Appellant does not contest the trial court's ultimate decision to award custody of Dawn to appellee. She only challenges the trial court's finding that appellee had equal standing and the trial court's application of the best interests of the child test. As discussed above, the trial court did not err in acting as it did, and the Court of Appeals did not err in upholding the judgment of the trial court.

Therefore, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C. J., W. BROWN, SWEENEY, LOCHER, HOLMES and C. BROWN, JJ., concur.