This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Peter R. Wolfram, appeals an order of the Lorain County Court of Common Pleas, Juvenile Division, that designated Appellee, Rhonda Anthony, as residential parent of their minor child. We affirm.
Sky Wolfram was born to Rhonda Anthony and Peter Wolfram, who are unmarried, on June 3, 1995. Sky resided with Ms. Anthony from birth. Although the relationship between Ms. Anthony and Mr. Wolfram had ended by Sky's birth, Mr. Wolfram maintained contact with his daughter. Ms. Anthony filed a complaint to establish paternity in conjunction with Lorain County Children Services on May 2, 1996. On October 25, 1996, Mr. Wolfram moved for an allocation of parental rights naming him as Sky's residential parent. Paternity was established by court order dated March 20, 1997. After conducting a hearing on January 22, 1998, the trial court designated Ms. Anthony as the residential parent and adopted a standard schedule of companionship. On March 23, 1998, Mr. Wolfram moved for a new trial pursuant to Civ.R. 59 and, in the alternative, "for the court to enter a new judgment." On May 21, 1998, the trial court modified its prior order.[1]
Notwithstanding the modifications, the court again awarded custody to Ms. Anthony and implemented standard companionship rights. Mr. Wolfram timely appealed from this judgment. He has argued two assignments of error on appeal.
ASSIGNMENT OF ERROR I
 The trial court erred in its allocation of parental rights and responsibilities by using the "change of circumstances" standard when the "best interests of the child" standard should have been used.
In his first assignment of error, Mr. Wolfram has argued that the trial court incorrectly concluded that Ms. Anthony held de facto custody of Sky and required Mr. Wolfram to demonstrate a change in circumstances to support his motion to be awarded custody. Although we agree that the trial court did initially apply an incorrect standard to the facts of this case, the correct standard was applied in the modified judgment.
R.C. 3109.04(E)(1)(a), which governs modification of an existing decree allocating parental rights and responsibilities, requires a demonstration that there has been a change in circumstances brought about by facts that have changed since the date of the prior decree or which were unknown to the movant at that time. R.C. 3109.04(E)(1)(a). Once the court determines that a change in circumstances has occurred, the court may reallocate parental rights as necessitated by the best interests of the child. Id. In order to change the designation of the residential parent without the consent of the adverse party, the advantages of the modification must outweigh the potential for harm to the child. See R.C. 3109.04(E)(1)(a)(iii).
In contrast, an unmarried mother is considered the sole residential parent following the birth of a child unless and until the father is designated residential parent by court order. See R.C. 3109.042. In allocating parental rights among unmarried parents when no prior court order is in effect, "[a] court designating the residential parent and legal custodian of a child * * * shall treat the mother and father as standing upon an equality[.]" Id. This provision, effective January 1, 1998, codified the holding of In re Byrd (1981), 66 Ohio St.2d 334, paragraph one of the syllabus, in which the Supreme Court of Ohio stated:
 When the alleged natural father of an illegitimate child, who has participated in the nurturing process of the child, files a complaint seeking custody of the child under R. C. 2151.23(A)(2), and the mother admits that he is the natural father of the child, the natural father has equality of standing with the mother with respect to the custody of the child.
The Court concluded that under these circumstances the trial court must determine custody based on the best interests of the child. Id. at paragraph two of the syllabus.
R.C. 3109.04(B)(1) requires a determination of the best interest of the child for the purposes of ordering an original allocation of parental rights and responsibilities. This court has determined that the best interest standard must be applied in initial actions to allocate parental rights in cases involving children of unmarried parents as well as in the context of divorce, dissolution, or annulment. See Clupper v. Sheets (Oct. 14, 1998), Summit App. No. 18877, unreported, at 5. Noting that "[R.C.] 3109.04(E) requires a `prior decree' before the change of circumstances standard is to be applied in a custody action," we have declined to imply a de facto decree granting custody to the parent with whom a child has resided. Id. at 6.
Although Sky resided with Ms. Anthony from birth, an allocation of parental rights and responsibilities had not been entered by the trial court. The trial court recognized that R.C.3109.042 places unmarried parents on an "equality" in an initial allocation of parental rights, but determined that Mr. Wolfram failed to demonstrated a change in circumstances as mandated by R.C. 3109.04(E)(1)(a). This analysis was incorrect. In the modified journal entry, however, the trial court stated:
 It is this Court's position that in the Ninth District, the burden upon Mr. Wolfram is to establish a change of circumstances. Recognizing that as to other jurisdictions within the State, the law in this area is unclear, the Court is willing to also consider the issue of custody on the basis of the best interest test only.
 * * * [T]he Court has considered the factors of Ohio Revised Code, Section 3109.04(F). Placing upon each factor the weight that this Court feels is appropriate, considering the credibility and demeanor of each witness, the Court has determined that the best interests of the child would be served by permitting her to remain with her mother and half-brother, with whom she has a strong bond.
(Emphasis added.) The trial court's language notwithstanding, Mr. Wolfram has argued that the omission of specific findings from the modified order indicates that the trial court did not adequately apply the best interest test. Mr. Wolfram's argument appears to be that R.C. 3109.04(B) requires the trial court to enter findings of facts upon the record. This allegation is without merit.
R.C. 3109.04(B) does not specifically require the trial court to enter findings of fact upon the record. Absent such a requirement, judgment following a trial to the court may be general unless a party requests, in writing, that the court provide findings of fact and conclusions of law. See Civ.R. 52. The trial court's modified judgment entry indicates that the court allocated parental rights according to the best interest test. Absent a request for findings of fact, this court will presume that the trial court properly applied the best interest test to the facts before it. See Sayre v. Hoelzle-Sayre (1994),100 Ohio App.3d 203, 212.
Mr. Wolfram did not request findings of fact as provided by Civ.R. 52. Accordingly, we presume that the modified judgment accurately reflects that the trial court applied the best interest test. Mr. Wolfram's first assignment of error is overruled.
ASSIGNMENT OF ERROR II
 The trial court's award of custody to [Ms. Anthony] was against the manifest weight of the evidence and an abuse of the trial court's discretion.
In his second assignment of error, Mr. Wolfram has argued that the allocation of parental rights in this case was against the manifest weight of the evidence when the parties are properly viewed "on an equality," as required by R.C. 3109.042. We disagree.
This court applies the same standard in determining whether both criminal and civil judgments are against the manifest weight of the evidence. Frederick v. Born (Aug. 21, 1996), Lorain App. No. 95CA006286, unreported, at 14. In addition, we note that an order allocating parental rights and responsibilities cannot be reversed on appeal in the absence of an abuse of discretion by the trial court. Rowe v. Franklin (1995), 105 Ohio App.3d 176, 181. Consequently, in reviewing the weight of the evidence substantial deference must be afforded to the trial court:
 [I]t is inappropriate in most cases for a court of appeals to independently weigh evidence and grant a change of custody. The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. * * * In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct.
(Citations omitted.) Miller v. Miller (1988), 37 Ohio St.3d 71,74. Our review is further circumscribed in the absence of findings of fact. Pettet v. Pettet (1988), 55 Ohio App.3d 128,129-30. Accordingly, we will only reverse a judgment as against the manifest weight of the evidence and order a new trial in the exceptional case where the judgment is "so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice[.]" Hardiman v. Zep Mfg. Co. (1984), 14 Ohio App.3d 222,226, quoting Royer v. Bd. of Edn. (1977), 51 Ohio App.2d 17,20. See, also, Pettet v. Pettet,55 Ohio App.3d at 130 (noting that a party that fails to request findings of fact pursuant to Civ.R. 52 faces "an almost insurmountable `mountain' " in carrying the burden of establishing that a judgment is against the manifest weight of the evidence in a custody case.)
In an action to determine an original allocation of parental rights and responsibilities, the trial court must consider all factors relevant to the best interest of the child, including, but not limited to:
The wishes of the child's parents regarding his care;
 If the court has interviewed the child * * * the wishes and concerns of the child, as expressed to the court;
 The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;
The child's adjustment to his home, school, and community;
 The mental and physical health of all persons involved in the situation;
 The parent more likely to honor and facilitate visitation and companionship rights approved by the court;
 whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
* * *
 Whether either parent has established a residence, or is planning to establish a residence, outside this state.
R.C. 3109.04(F)(1).
Dr. David Zachau reviewed the psychological history and diagnoses of both parents. Ms. Anthony had been hospitalized several times since 1984. Although she had been diagnosed as schizophrenic, Dr. Zachau opined that a more accurate diagnosis would be a borderline personality disorder. Dr. Zachau also observed that Mr. Wolfram exhibited characteristics of a personality disorder, but was unwilling to provide a specific diagnosis. He observed that serious psychological disturbances in Mr. Wolfram's past were exacerbated by drug use, leaving him prone to delusions while using marijuana. Both parents stated that they were no longer using drugs, although Ms. Anthony recalled that she had used marijuana on one recent occasion with Mr. Wolfram.
Although Mr. Wolfram had experienced several incidents of violence with members of his family, he testified that the relationships were currently supportive. Ms. Anthony recalled several violent interactions with Mr. Wolfram. Mr. Wolfram recounted similar instances involving Ms. Anthony. Mr. Wolfram alleged that Ms. Anthony displayed a disregard for her children. The guardian ad litem appointed by the court stated that Ms. Anthony had been charged with child endangerment after leaving her children unattended in a vehicle while she went into a grocery store. Ms. Anthony responded that she had done so because it was raining and she was running a quick errand in the store. These charges did not result in a conviction.
Both Ms. Anthony and Mr. Wolfram stated that they were currently receiving counseling. Neither was employed. Mr. Wolfram was a full-time student and was completing an internship in teaching. Ms. Anthony was pursuing vocational training in starting her own business. Both had made arrangements for daycare and preschool for Sky. Both parents had adequate housing. and both resided in Ithaca, New York. Each parent testified that they had an adequate support system in place: Mr. Wolfram's family lives in Ithaca, and Ms. Anthony stated that she had become integrated into a church community and had formed friendships in Ithaca. Witnesses confirmed that Sky had strong relationships with both parents and with her older brother, Mandela, who also resides with Ms. Anthony.
The evidence in this case does not require the conclusion that the trial court lost its way in designating Ms. Anthony as Sky's residential parent. See Frederick v. Born, supra, at 14, citing State v. Shue (1994), 97 Ohio App.3d 459, 466. Rather, the evidence reflects differences of opinion, and the judgment in this case required distinctions between shades of credibility best made by the trier of fact. See Miller v. Miller, 37 Ohio St.3d at 74. Accordingly, we cannot conclude that this is the exceptional case in which the judgment was against the manifest weight of the evidence. Mr. Wolfram's second assignment of error is overruled.
Mr. Wolfram's assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
 KK
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ LYNN C. SLABY
 FOR THE COURT
BAIRD, P.J.
BATCHELDER, J.
CONCUR
[1] Changes to the substance of a final order may only be made as a result of action on a motion to set aside a judgment, in whole or in part. See Kemper Securitiess., Inc. v. Schultz (1996), 111 Ohio App.3d 621, 625. Although inartfully captioned, we construe Mr. Wolfram's motion as a motion for relief from judgment pursuant to Civ.R. 60(B)(5). See, generally, Dunn Specialty Steels, Inc. v. World Metals, Inc. (Aug. 18, 1999), Summit App. No. 19207, unreported, at 4-6.