OPINION
Appellant, Elise Stults, appeals an order of the Clinton County Court of Common Pleas granting legal custody of her daughter, Karen Cline, to Larry and Wanda Cochran, appellant's uncle and aunt. We affirm.
Karen, who was born on October 19, 1993, is the natural child of appellant and Ralph Allen Moon. Appellant is married to Lance Stults ("Stults"). On May 15, 1997 Karen was placed in the custody of the Clinton County Children's Services ("CCCS"), and on September 25, 1997 she was found to be an abused and neglected child. Stults was found to be the perpetrator of the abuse, although subsequent criminal proceedings against him were dismissed. Appellant was convicted of child endangering. Karen was removed from appellant's home and has remained in relative and foster care placements in the temporary legal custody of CCCS.
The trial court held hearings on September 16, 1998 and October 21, 1998 to determine the disposition of Karen's custody on a motion for modification of temporary custody to legal custody filed by CCCS. At these hearings, the Cochrans expressed their willingness to assume legal custody of Karen. Mr. Cochran testified that Karen has been visiting the Cochran home in Michigan for one week every third week. Mr. Cochran stated that he has three sons, ranging from seven to twenty-one years of age, and everyone in the household had a good relationship with Karen. He stated that the visits were going very well and that Karen especially enjoyed playing with the Cochran's seven-year-old son. Mr. Cochran stated that if Karen was placed with his family, Karen would have her own bedroom with furniture and toys. The Cochrans would be able to provide medical insurance for Karen and have an income sufficient to meet Karen's needs. Mr. Cochran stated that if he and his wife were granted legal custody of Karen, he would encourage contact between Karen and her parents and would drive to Ohio to facilitate appellant's visitations with Karen.
Deborah Joy, a licensed professional clinical counselor and an expert on abused and neglected children, testified that she has met with Karen on a weekly basis since Karen was four years old. Joy testified that during their sessions, Karen "has improved dramatically in her behavior and her ability to regulate her emotion" and that "she seems happier and more relaxed." Joy expressed her professional opinion that Karen needs to be placed in a family setting where she feels safe and understood as soon as possible.
Denise Gray, a CCCS caseworker, also testified. Gray stated that appellant and Stults had not satisfactorily completed their case plan. Stults had not completed the drug and alcohol assessment. Appellant and Stults had failed to complete the mental health component and the psychological assessment to the agency's satisfaction. Gray stated that on February 20, 1998, CCCS changed the goal of the case plan from reunification to permanent out of home placement, excluding adoption. Gray stated that it was necessary to supervise visits between appellant and Karen, and that during these visits, there was little verbal communication between appellant and her daughter. Gray noted that appellant continued to live with Stults, the perpetrator of Karen's abuse, and that appellant and Stults had not been cooperative with CCCS. For these reasons, CCCS found that reunification would not be in Karen's best interest. However, according to Gray, Karen has made much progress since she has been staying with the Cochrans and is much happier. Gray stated that CCCS recommended that Karen be placed with the Cochrans.
Georgia Miller, the guardian ad litem, submitted a report to the court in which she wrote about her concerns regarding the possibility of reunifying appellant and Karen. Miller noted that there was not much improvement in the interaction between appellant and Karen. Karen has told Miller that she does not want to live with Stults. Miller is also concerned by the fact that appellant and Stults have had another baby together recently and have refused to allow Karen to visit with her new brother. Miller recommended that legal custody of Karen be granted to the Cochrans. Miller has noticed a "great difference in Karen's behavior" in that she is now "much more stable, she's happier, she's much more trusting."
Appellant testified that she believes she is capable of caring for Karen and could keep her safe. She stated that the few scheduled visits with Karen that she had missed were due to illness. Appellant insisted that she and Stults have undergone psychological assessments but she refused to consent to any testimony or report by the psychologist to the trial court or CCCS. Karen's father indicated that he believed that the Cochrans should have custody of Karen.
By entry dated November 5, 1998, the trial court granted legal custody of Karen to the Cochrans. Appellant appealed, raising the following assignment of error:
 THE TRIAL COURT ERRED IN AWARDING PERMANENT CUSTODY OF KAREN CLINE, A MINOR CHILD, TO LARRY AND WANDA COCHRAN WHERE SUCH CUSTODY WAS NOT IN THE BEST INTEREST OF THE CHILD AND APPELLANT SUBSTANTIALLY COMPLIED WITH THE COMPREHENSIVE REUNIFICATION PLAN.
Appellant claims that because she had substantially complied with the case plan, the trial court's granting of permanent custody of Karen to the Cochrans was inappropriate. However, the trial court did not grant "permanent" custody in this case; instead, the Cochrans were granted "legal" custody of Karen. A grant of legal custody is significantly different from a grant of permanent custody. In re Coffey (Jan. 26, 1998), Madison App. No. CA97-05-021, unreported, at 7, citing In re Hitchcock (1996),120 Ohio App.3d 88, 100-101, leave for appeal allowed (1997),78 Ohio St.3d 1455. This court has previously noted that "[o]ne of the most obvious differences between the two dispositions is that the parent's rights to the child are completely terminated when permanent custody is awarded while residual parental rights remain under legal custody." Id.
It "is well recognized that the right to raise a child is an `essential' and `basic' civil right," and that "parents `must be afforded every procedural and substantive protection the law allows.'" In re Hayes (1997), 79 Ohio St.3d 46, 48, quotingStanley v. Illinois (1972), 405 U.S. 645, 651, 92 S.Ct. 1208,1212 and In re Smith (1991), 77 Ohio App.3d 1, 16. It has also been "deemed `cardinal' that the custody, care and nurture of the child reside, first, in the parents." In re Murray (1990),52 Ohio St.3d 155, 157, following H. L. v. Matheson (1981),450 U.S. 398, 410, 101 S.Ct. 1164, 1171. However, a parent's interest in the care, custody, and management of her child is secondary to that of the best interest of the child. In re Shaeffer Children
(1993), 85 Ohio App.3d 683, 690, discretionary appeal not allowed (1993), 67 Ohio St.3d 1451, following In re Perales (1977),52 Ohio St.2d 89. R.C. 2151.353(A)(3) gives the trial court the discretion to award legal custody of a child who has been previously adjudicated dependant to a person other than the parent of the child.[1] When granting legal custody, the trial court "retains continuing jurisdiction, and may modify its prior custody award or grant custody to another party if a change in circumstances makes it necessary." In re Josslin (May 4, 1998), Butler App. No. CA97-07-138, unreported, at 7, quoting In re Byrd
(1981), 66 Ohio St.2d 334, 338.
The applicable standard of review in a child custody matter is abuse of discretion. Miller v. Miller (1988), 37 Ohio St.3d 71,74; In re Caputo (Apr. 13, 1998), Butler App. No. CA97-02-032, unreported. An abuse of discretion implies that the trial court's decision was unreasonable, unconscionable, or arbitrary.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. A reviewing court should follow a presumption that the trial court's findings are accurate because the trial court is in the best position to view the witnesses and observe their demeanor so as to weigh the credibility of the testimony. In re Jane Doe 1 (1990), 57 Ohio St.3d 135,138, citing Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80.
In this case, the trial court considered the best interest of Karen when determining that the Cochrans should be granted legal custody of Karen. The record indicates that Karen's counselor, CCCS, and the guardian ad litem recommended to the trial court that it would be in Karen's best interest to be placed with the Cochrans on a more permanent basis. Karen's natural father also requested that the court grant custody of his daughter to the Cochrans. There was testimony that because appellant and Stults had not satisfactorily completed the case plan, reunification with Karen was not recommended. Moreover, all testimony indicated that Karen's sense of well-being had increased dramatically during the time she had been in the Cochrans' care.
Our review of the record fails to reveal that the trial court abused its discretion in granting the Cochrans legal custody of Karen. There was competent, credible evidence supporting the trial court's determination that granting legal custody of Karen to the Cochrans was in Karen's best interest. Contrary to appellant's assertions in her brief, she has not been permanently divested of her parental rights but has retained "residual rights" to her child as defined by R.C. 2151.011(B)(41).[2] As a matter of law, the trial court retains continuing jurisdiction of a legal custody case. Moreover, the court's judgment entry states that appellant shall continue to have supervised visitations with Karen. Appellant's assignment of error is overruled.
Judgment affirmed.
YOUNG and WALSH, JJ., concur.
[1] 1. R.C. 2151.353(A) states the following:
 If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition: * * * (3) Award legal custody of the child to either parent or to any other person, who, prior to the dispositional hearing, files a motion requesting legal custody of the child.
R.C. 2151.353 was amended in March of 1998, but subsection (A)(3) remained unchanged.
[2] 2. R.C. 2151.011(B)(41) defines "residual parental rights, privileges, and responsibilities" as the following:
 Those rights, privileges, and responsibilities remaining with the natural parent after the transfer of legal custody of the child, including, but not necessarily limited to, the privilege of reasonable visitation, consent to adoption, the privilege to determine the child's religious affiliation, and the responsibility for support.
R.C. 2151.011 was amended in March of 1999, but subsection (B)(41) remained unchanged.