DECISION AND JUDGMENT ENTRY
Appellant Shawn Walters appeals a judgment of the Juvenile Division of the Washington County Court of Common Pleas granting custody of Tara Walters to appellee Pamela Hanson. Appellant asserts two assignments of error:
 I. THE TRIAL COURT ABUSED ITS DISCRETION IN DESIGNATING THE MOTHER RESIDENTIAL PARENT AND LEGAL CUSTODIAN IN LIGHT OF THE ALLEGED SEXUAL ABUSE, PHYSICAL ABUSE AND DOMESTIC VIOLENCE IN THE HOME OF THE MOTHER AND SAID DECISION IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.
 II. THE COURT ABUSED ITS DISCRETION IN DESIGNATING THE MOTHER RESIDENTIAL PARENT AND LEGAL CUSTODIAN IN LIGHT OF HER LACK OF CARE FOR THE CHILD AND THE CHILD'S HOME ENVIRONMENT AND SAID DECISION IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.
As the assignments of error address similar issues, we will consider them together.
Tara Walters was born in November 1994 to appellee and appellant who have never married and were not co-habitating at the time of Tara's birth. Since birth, Tara lived with appellee, but spent a substantial amount of time with appellant. In appellee's complaint for custody, she indicates that "[a] child support enforcement agency administrative proceeding establishing child support was pursued approximately (2) years ago." Appellee indicates that she is unsure whether a determination of paternity was made. Appellee also states in her complaint that no court order concerning custody or visitation exists. A copy of the child support order is not part of the record.
As a result of allegations that Tara was sexually molested by her half-brother, Corey Arnold, appellant filed a petition for custody of Tara. Appellee filed her complaint for custody on the same day. The trial court granted temporary custody of Tara to appellee pending a final hearing on the custody issue. At the hearing, both parties called witnesses to support their custody requests.
Kathy Nolan, a caseworker with the Washington County Children's Services Board ("WCCSB"), testified to allegations of abuse and neglect regarding Tara. Ms. Nolan indicated that WCCSB received an unsubstantiated sexual abuse referral in January 1995. In April 1996, WCCSB received a referral alleging Tara's neglect and opened a case. In March 1998, WCCSB received a referral alleging that Corey had sexually abused Tara.
Ms. Nolan testified that she was Tara's caseworker from February to October 1998, at which time the case was closed. WCCSB was involved because there were issues concerning supervision, environmental management, the condition of the home and domestic problems between appellee and Corey. Appellee was told to attend counseling with Corey, attend parenting classes, install an alarm or monitor on Tara's door and report any suspected inappropriate activity between Tara and Corey. Tara was to attend sexual abuse counseling. Ms. Nolan testified that appellee installed a baby monitor in Tara s room, that Tara completed sexual abuse counseling and that appellee attended one session of counseling while the case was open. The case was closed in October 1998 because Ms. Nolan felt that there would be no benefit from further services. Ms. Nolan testified that she would not have closed the case if she was afraid for Tara's safety or welfare. Ms. Nolan also testified that the home was cluttered and messy, but did not pose a safety hazard.
Emily Donnely, another employee of WCCSB, testified that the sexual abuse claim made in March 1998 was substantiated when Corey Arnold made a statement to Detective Schuck of the Sheriff's Office in which he admitted that he touched Tara "in the private area." The delinquency case against Corey arising from this incident was dismissed even though Ms. Donnely recommended that the case proceed. Ms. Donnely testified that appellee stated that she didn't believe Corey could have sexually molested Tara. Ms. Donnely testified that she believed Tara was safe in appellee's home as long as the necessary precautions were taken and Corey had no unsupervised contact with Tara. Ms. Donnely took no action to have Tara removed from appellee's home.
Jackie McAttee testified that appellee has been to her home with the children and that Corey resided with her "off and on for awhile." Corey began to reside with Mrs. McAttee when he came over with bruises on his arm and scratches on his face that he indicated were a result of a fight he had with appellee. Mrs. McAttee testified that she wouldn't characterize appellee's relationship with the children as positive. Mrs. McAttee further indicated that while appellee loves her children, she "is not mother material" as she does not provide for them emotionally. Mrs. McAttee testified that Tara is always around her mother and is often dirty with stringy, matted hair. Mrs. McAttee also testified that appellee is usually in bed when she calls, that Corey answers the phone, and that he babysits Tara. Mrs. McAttee stated that Tara is more outgoing and happier when she is with appellant and that appellee leaves Tara with appellant more than half of each month.
Kimberly Wittekind, the wife of appellant's brother-in-law, testified that she has seen Tara twice when appellee dropped her off for visitation. Her hair did not appear to be combed and she looked dirty. Mrs. Wittekind testified that she once saw appellee yelling and swearing at Tara on the street. Mrs. Wittekind also testified that Tara has a positive relationship with appellant and his wife, Sabrina. While she has seen appellant discipline Tara, she has never seen him yell or swear at Tara.
William Wittekind, appellant's brother-in-law, testified that he previously lived across the street from appellee for approximately one year. He testified that the outside of appellee's home was always cluttered and there was furniture in the yard. Mr. Wittekind testified that he constantly heard screaming between appellee and Corey. On one occasion, he observed appellee and Corey in the driveway, hitting and kicking each other with closed fists. Mr. Wittekind testified that Tara came outside during the fight and appellee kicked Tara in the mid-section, causing her to fall.
Sabrina Wittekind Walters, appellant's wife, testified that she has two children who get along well with Tara and she has enrolled Tara in Head Start. Mrs. Walters testified that Tara is unclean when picked up for visitation and sometimes has shoes on which are too tight, causing blisters. Mrs. Walters testified that in December 1998, appellant had Tara more often than appellee and that during at least forty-eight of the previous fifty-two months this was the case. She further testified that WCCSB has removed Tara from appellee's home twice because it was an unfit home. Mrs. Walters testified that appellee takes Tara with her when she delivers newspapers if Tara is not at appellant's home. Mrs. Walrers also testified that she has heard appellee curse at Tara, has seen appellee and Corey fighting, and observed appellee hit Corey with a plastic baseball bat.
Mrs. Walters further testified that on one occasion she observed Tara with "her dress pulled up and her pants — her hands inside her pants playing with herself." When Mrs. Walters questioned Tara as to why she was behaving that way, Tara stated that Corey touched her and hurt her in that area. Mrs. Walters examined Tara and saw that she was red and swollen. Appellant then took Tara to the emergency room. When cross-examined regarding the fact that the emergency room report did not reflect anything out of the ordinary in the genital area, Mrs. Walters stated that she had bathed Tara and Tara had waited for two hours at the emergency room before she was seen.
Appellant testified that he filed for custody because he feels appellee is not fit to raise Tara. He stated that Tara is often dirty and not taken care of and that appellee's house is a mess. He further testified that appellee takes Tara out in the cold without a coat and leaves Tara in the car while appellee works on her paper route. Appellant testified that when he was at appellee's home the previous Sunday, Tara's room had clothes all over the bed and he couldn't even get into the room because of the clutter. He also observed clothes in the living room and dirty dishes in the sink. Appellant further testified that he has seen appellee and Corey fight with wooden pool sticks and baseball bats. When he was living with appellee, he would break up fights between the two. Appellant also testified that he has taken dart guns away from Corey because he was shooting lights out when Tara was sitting on the floor. Appellant indicated that he has called WCCSB many times regarding appellee's care for Tara.
Creston Whiting, appellee's landlord, testified that appellee's home is in an acceptable condition when he goes there and that the children are always clean. Mr. Whiting further testified that appellee sometimes argues with Corey, but they have a good relationship.
Lastly, appellee testified and refuted many of the allegations leveled against her. She stated that she argues with Corey but has had no fistfights with him in the last six months to one year and has never kicked Tara. Appellee also testified that Tara sleeps with her every night and that she has only spoken to Jackie McAtee once in the last six months. Appellee testified that she does not believe Corey abused Tara, but has taken measures to protect Tara nonetheless. Appellee has a working baby monitor, supervises all contact between Corey and Tara and attended two counseling sessions. Further, Tara completed the required sexual abuse counseling and Corey attended two counseling sessions regarding his relationship with appellee and is working with a counselor at Marietta High School. WCCSB has dropped the case and is no longer monitoring her on a regular basis.
Appellee also testified that while she doesn't believe appellant has Tara more than half the time, she allows appellant to have Tara any time he wants her. Appellee testified that she attempted to enroll Tara in Head Start, but she exceeded the income requirements. She is enrolling Tara in Easter Seals for speech and hearing. Appellee delivers newspapers for the Marietta Times and the Columbus Dispatch. For the Dispatch, she starts at 6:00 a.m. and finishes at 7:30 a.m.; for the Times, she starts at 11:00 a.m. and finishes around 4:00 p.m. Tara usually accompanies appellee when she is doing her routes, and often naps while she is delivering theTimes. Appellee testified that she used to have a downtown delivery route, but someone called WCCSB and reported that she was leaving Tara in the car so she gave up that route.
Appellee testified that she makes sure Tara has clean clothes on, her hair is combed and she is bathed every day. Appellee also testified that Corey has hit her a couple of times, but that she never got into a fistfight with Corey when she was living near Mr. Wittekind.
Following the hearing, the trial court issued a judgment entry designating appellee as Tara's residential parent and legal custodian. The trial court granted appellant liberal visitation rights. Appellant filed a timely appeal.
R.C. 3109.04(B)(1) governs initial custody awards and requires the trial court making the initial custody award to apply a "best interest of the child test." It provides:
 When making the allocation of the parental rights and responsibilities for the care of the children under this section in an original proceeding or in any proceeding for modification of a prior order of the court making the allocation, the court shall take into account that which would be in the best interest of the children. * * *
R.C. 3109.04(F)(1), which delineates the best interest standard that the trial court must apply, provides that:
 In determining the best interest of a child pursuant to this section, * * *, the court shall consider all relevant factors, including, but not limited to:
(a) The wishes of the child's parents regarding his care;
 (b) If the court has interviewed the child in chambers pursuant to division (B) off this section regarding the child's wishes and concerns as to the allocation off parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 (c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;
(d) The child's adjustment to his home, school, and community;
 (e) The mental and physical health of all persons involved in the situation;
 (f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court;
 (g) Whether either parent has failed to make all child support payments including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
* * *
In its conclusions of law, the trial court indicated that the parties had an equal standing concerning custody as both parties participated in raising the child. See In re Byrd
(1981), 66 Ohio St.2d 334, paragraphs one and two of the syllabus (holding that when the alleged natural father of an illegitimate child, who has participated in the nurturing process of the child, files a complaint seeking custody and the mother admits that he is the natural father of the child, the father has equality of standing with respect to the custody of the child and the best interest test is applied). The trial court then indicated that the best interest test delineated in R.C. 3109.04(B)(1) applies and the court must consider all relevant factors in deciding the custody of the child.[1]
Appellant argues that the trial court abused its discretion in designating appellee as the residential parent due to the evidence off alleged sexual abuse, physical abuse, domestic violence in the home, appellee's lack of care for Tara, and the home environment. Appellant also submits that the trial court's decision is contrary to the manifest weight of the evidence.
When reviewing a custody determination, we apply an abuse of discretion standard of review. In Davis v. Flickinger
(1997), 77 Ohio St.3d 415, 418, the Supreme Court of Ohio noted that trial courts must be given wide latitude in custody cases:
 * * * We are mindful that custody issues are some of the most difficult and agonizing decisions a trial judge must make. Therefore, a trial judge must have wide latitude in considering all the evidence before him or her — including many of the factors in this case — and such a decision must not be reversed absent an abuse of discretion. Miller v. Miller (1988), 37 Ohio St.3d 71.
An abuse off discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. In re Jane Doe 1
(1991), 57 Ohio St.3d 135; Blakemore v. Blakemore (1983),5 Ohio St.3d 217. When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. In re Jane Doe 1;Berk v. Matthews (1990), 53 Ohio St.3d 161, citing Buckles v.Buckles (1988), 46 Ohio App.3d 102.
In his first assignment of error, appellant asserts that the evidence demonstrates that there were numerous incidents of domestic violence in the home, that the sexual abuse of Tara by Corey was substantiated and that Ms. Donnely testified that Tara is at risk in appellee's home if the sexual abuse is not addressed. Appellant asserts that the trial court abused its discretion in concluding that WCCSB believes Tara is not at risk in appellee's home and in relying on the fact that the delinquency complaint was dismissed against Corey. Appellant's arguments are not persuasive.
First, we note that appellee denied many of the domestic violence claims leveled against her by appellant and his witnesses, though she admitted that Corey had assaulted her on occasion. Appellee testified that Corey is attending counseling regarding his relationship with her and that they have not had a physical altercation in six months to one year. Appellee further testified that Tara is not usually there when such altercations occur and that she never kicked Tara as Mr. Wittekind testified.
As to appellant's arguments regarding Corey's sexual abuse of Tara, we note that the record contains evidence that appellee has taken actions to prevent further incidents. Tara was taken to counseling and appellee took several measures to protect Tara from further incidents. Specifically, appellee installed a baby monitor in Tara's room, sleeps with Tara every night so she is not alone and does not leave Tara alone with Corey. Kathy Nolan testified that she does not believe Tara is at risk any longer or she would not have closed the case. Emily Donnely also testified that she felt that Tara was only at risk if the allegations were not addressed. Clearly, there is support in the record for the trial court's finding that WCCSB believes Tara is not at risk in her home.
We agree with appellant that the dismissal of the delinquency complaint against Corey does not relieve the trial court of its obligation to review all the statutory factors, including Tara's relationship with Corey. However, there is no indication that the trial court over-emphasized the dismissal and ignored its duty. It is merely one factual finding which the court made and, as there is some evidence to support the ultimate conclusion that Tara is not in danger of being sexually abused at appellee's home, we cannot say the trial court abused its discretion.
In his second assignment of error, appellant argues that the child is repeatedly in a filthy condition, that appellee has Tara in the car with her during the day while she delivers newspapers and that appellee has screamed obscenities at Tara. Appellant further argues that appellee's home is not properly maintained.
We note, however, that "[t]he knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." Miller v. Miller (1988), 37 Ohio St.3d 71,74, citing Trickey v. Trickey (1952), 158 Ohio St. 9, 13. Appellee denies that she does not properly clean or care for Tara. Further, Ms. Nolan and Mr. Whiting both testified that appellee's home, while cluttered and messy, is in an acceptable condition.
We agree with appellant's concerns regarding appellee's habit of taking Tara with her while she delivers newspapers. However, there is no evidence that such a practice has been harmful to Tara and, given appellant and his wife's testimony that Tara is often with them, the frequency of this practice is likely not disruptive to Tara's well-being. Further, appellee has testified that Tara will be attending Head Start every day which will eliminate the regularity of this practice.
We also note that the trial court relied on several factors to determine that it was in Tara's best interest to designate appellee as her custodial parent. In its judgment entry, the trial court found that appellee provides very liberal visitation to appellant, that appellee cooperated with WCCSB's investigation of the sexual abuse allegation and followed all their recommendations, and that appellee and Tara are very attached to one another. The trial court found that Tara is never left alone with Corey, that appellee's home is adequate for the family, that WCCSB believes Tara is not at risk in appellee's home and that appellee works several jobs to provide for her children. In its conclusion, the court found that though appellant was capable of caring for Tara, the court felt it was unnecessary to remove Tara from appellee's home.
Given that the trial court is required to consider all relevant circumstances in determining a child's best interest, we do not find that the trial court abused its discretion in awarding custody of Tara to appellee based on these factors. Reviewing courts must give great deference to child custody decisions made by trial courts. See Pater v. Pater (1992),63 Ohio St.3d 393; Kerstetter v. Kerstetter (Mar. 26, 1993), Lawrence App. No. 92CA01, unreported. The record in the instant case contains sufficient competent, credible evidence to support the trial court's findings. See C.E. Morris v.Foley Construction Co. (1978), 54 Ohio St.2d 279; Ross v. Ross
(1980), 64 Ohio St.2d 203. An appellate court should not substitute its judgment for the trial court when competent, credible evidence supports the trial court's findings. Therefore, we hold that the trial court did not abuse its discretion in awarding custody to the appellee.
We overrule both of appellant's assignments of error.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
KLINE, P.J. ABELE, J.: Concur in Judgment and Opinion.
For the Court
 BY: ________________________ WILLIAM H. HARSHA, JUDGE
[1] Neither party argues that the trial court applied an erroneous legal standard. However, in her brief, appellee argues that it is appropriate to give considerable weight to the fact that Tara has resided with appellee since birth and analogizes this case to a custody modification. In In theMatter of Webster (Sept. 14, 1993), Athens App. No. 92CA1559, unreported, we wrote that: "If paternity has been adjudicated with a corresponding support order, and the parents have not lived together during the life of the child, a father petitioning the court for custody will need to meet the [more rigorous] standards of R.C. 3109.04(E)(1) for custody modification, because a support order in a paternity action `impliedly and necessarily' recognizes a mother's legal custody of a child who lives with her. * * *"
Here, appellee stated in her complaint for custody that a support order was entered; however, no finding was ever made by the trial court regarding the effect of that order on the custody determination. Further, neither party argued in the trial court or on appeal that the modification of custody standard outlined in R.C. 3109.04(E)(1) is applicable and we cannot make such a determination from the record. Therefore, we will not address this issue and will assume the trial court applied the appropriate legal standard.
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutesa final judgment entry and the time period for further appealcommences from the date of filing with the clerk.