OPINION
{¶ 1} This is an appeal from the decision of the Stark County Court of Common Pleas, Family Court Division which designated that Rodney Stout be granted the status of residential parent and legal custodian of Le Ann Stout (D.O.B. 9/13/97).
 {¶ 2} The sole Assignment of Error is:
 ASSIGNMENT OF ERROR {¶ 3} "THE TRIAL COURT'S AWARD OF CUSTODY OF THE PARTIES' MINOR DAUGHTER TO APPELLEE WAS AN ABUSE OF DISCRETION AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 4} In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217. We must look at the totality of the circumstances in the case sub judice and determine whether the trial court acted unreasonably, arbitrarily or unconscionably.
 {¶ 5} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. State v.Martin (1983), 20 Ohio App.3d 172. See also, State v. Thompkins (1997),78 Ohio St.3d 380. The discretionary power to grant a new Ashould be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Martin at 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230.
 {¶ 6} Under R.C. 3109.04 the standard to be applied in child custody cases is the best interest of the child. This primary consideration is further reinforced by the Ohio Supreme Court in In Re:Byrd (1981), 66 Ohio St.2d 334. This is not to say that the court may punish a parent for conduct considered immoral without other factors affecting the best interests of the child. Whaley v. Whaley (1978),61 Ohio App.2d 111.
 {¶ 7} In this case appellant has accepted the trial court's Finding of Facts paragraphs 1 through 21 which will be, as pertinent, summarized.
 {¶ 8} Appellant is the mother of Le Ann Stout and appellee's parentage was established on July 6, 2000.
 {¶ 9} His complaint for custody under R.C. § 3109.27 was filed.
 {¶ 10} Fact paragraph 7 states:
 {¶ 11} "7. Temporary custody of LeAnn was changed from Mother to the Father by order of a Court Magistrate at a temporary hearing on May 21, 2002. The Magistrate accepted the findings of the Court in a separate matter, being Juvenile Case No. 117890 in that the mother was involved in numerous relationships with various men and had instability in her life at that time. LeAnn has been in this home since May 21, 2002. According to the Guardian ad Litem report, she has made a good adjustment. She is currently enrolled in pre-school at Franklin Elementary School from 8:00 a.m. until noon."
 {¶ 12} A portion of Fact paragraph 16 is as follows:
 {¶ 13} "The Defendant's sexual promiscuity, lack of stable housing and relationships sets out the argument for reallocation of parental rights. The Defendant admits to having resided in five places within a short period of time. She chose to relocate from place to place, moving in with boyfriends within a very short period of time. One of those relationships identified in Case 117890 was that at the end of November, 2000 until February, 2001, the defendant resided in Massillon, in the residence of her ex-fiancé, Randy Mundell, a Sarta bus driver. Prior to moving in with him, they had dated a "couple days". From the testimony presented, the Court found Mundell and the defendant began to have disagreements. The Defendant vacated that residence alleging domestic violence.
 {¶ 14} "Two days later, the Defendant took her children and went to reside with Bill Yoder. She had had a previously friendship/relationship with Mr. Yoder. Mr. Yoder presented himself at the trial in Case 117890 as well as the trial in this case. In Juvenile Case 117890, the Court found the relationship with Yoder to be a positive move in the Defendant's otherwise transient life. Mr. Yoder appeared to be able to provide the stability and nurturing relationship that the Defendant and her children needed. In the prior case, however, this Court expressed concern, given the mother's history that she would not remain in this relationship. In fact, that is what occurred. At the time of the hearing in the prior case, she and Yoder testified that they intended to marry. Subsequently, In April of 2002, the Defendant and Mr. Yoder got into an argument resulting in Mr. Yoder demanding that the defendant and her child vacate the residence. The Defendant vacated the residence and returned to the home of Randy Mundell, the person who she claims had been abusive toward her. While at the home of Mundell, she and Mundell obtained a marriage license. Three days later, the Defendant reconciled with Mr. Yoder, returned to live with him and attempted to obtain a marriage license with Yoder. The Probate Court refused to issue a marriage certificate until the certificate with Mundell expired. Upon the expiration of the Mundell/Korosy certificate, Ms. Korosy and Mr. Yoder were married and remain married today. In the past five years, the Defendant and her child have had six separate live-in men reside with them."
 {¶ 15} Based upon these findings which are clearly supported by the record we cannot determine that the trial court abused its discretion in finding the best interests of the child to be with her father, subject to visitation and participation by the mother.
 {¶ 16} Also, as is apparent by the above record references, we find such decision to be in accordance with the weight of the evidence.
 {¶ 17} The Assignment of Error is denied.
 {¶ 18} This cause is affirmed.
By: Boggins, J., Gwin, P.J and Farmer, J. concur.