JUDGMENT ENTRY.
This appeal is considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct.R.Rep.Op. 3(A).
This case involves a custody dispute over Ja'Shawn Martin, five-years old, among his father, his mother, and his maternal grandmother. After a lengthy trial, the juvenile court awarded custody to the father. The mother and grandmother now appeal. For the following reasons, we affirm the judgment of the juvenile court.
Ja'Shawn Martin was born on June 30, 1999, to appellant Felischra Riggs and appellee Jason Martin, who never married. After Ja'Shawn was born, his father lived with him and his mother, but he eventually moved out of the home. At the beginning of the custody trial, the parties stipulated that Ja'Shawn had been residing with his maternal grandmother, appellant Sylvanie Riggs, for the past one and one-half years, after his mother had to move across town when her apartment complex closed. During this period, the father and mother would spend alternate weekends caring for Ja'Shawn, and the mother would frequently visit Ja'Shawn and her other two children, who also resided with the grandmother, on weekdays. This arrangement appears to have been working until the father remarried in 2001.
The father currently lives with his new wife, Valencia Martin, and her seven-year-old daughter. After the father remarried, the mother, the father and the grandmother each filed for legal custody of Ja'Shawn under R.C. 2951.23(A)(2), which provides that juvenile courts have "original exclusive jurisdiction * * * (2) to determine the custody of any child not a ward of another court of this state." The juvenile court eventually awarded custody to the father, with generous visitation rights granted to the grandmother. Because evidence at the trial demonstrated that the mother was unable to care for Ja'Shawn without substantial assistance from the grandmother, visitation rights were granted to the grandmother to ensure that Ja'Shawn had the opportunity to continue a meaningful relationship with his mother.
In the mother's appeal, she brings forth five assignments of error.[1]
Essentially, in each of her assignments, she contends that the trial court applied the incorrect legal standard in determining that the father should be granted legal custody. We disagree.
R.C. 3109.04(A), which governs initial custody determinations, provides that a trial court must consider the best interest of the child when allocating parental rights and responsibilities. But once a decree allocating parental rights and responsibilities has been issued, a trial court is not permitted to modify that decree "unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, [or] his residential parent, * * * and that the modification is necessary to serve the best interest of the child."[2] The mother argues that the juvenile court should have used this "change of circumstances" test when determining whether to award custody to the father. But we note that there had been no prior decree determining custody, so this test could not have been applied. Instead, to determine custody between two parents of equal standing, the best-interests-of-the-child standard was applicable.[3]
The mother asserts that this court should follow In re Yates,[4] a Tenth Appellate District case that applied the stricter "change of circumstances" standard to a custody action brought by the father of a child born out of wedlock. In Yates, the court held that although there had been no prior judicial custody determination, the change-of-circumstances standard applied because legal custody had been established "by implication in the judgment of a prior paternity action."[5] We decline to follow Yates because not only are the facts not similar (there was no paternity action here), but the Yates court failed to apply the Ohio Supreme Court's decision in In re Byrd,[6]
which involved a petition for custody brought by the natural father of a minor child born out of wedlock. In Byrd, the parents had lived together for less than two years after the birth of the child, and custody of the child had not previously been judicially determined. The court held that when the "natural father of an illegitimate child, who has participated in the nurturing process of the child, files a complaint seeking custody of the child under R.C. 2151.23(A)(2), and the mother admits that he is the natural father of the child, the natural father has equality of standing with the mother with respect to the custody of the child."[7]
In these types of cases, a trial court must determine which parent should have legal custody of the child on the basis of what would be in the best interests of the child.[8]
Here, the father participated in raising Ja'Shawn to some extent and lived with him and his mother for seven to eight months, and the mother admitted at trial that she and the father were "sharing custody." Accordingly, the best-interests test was applicable, and the juvenile court did not err in failing to apply the "change of circumstances" test in determining custody between the parents.
Next, the mother argues that the juvenile court did not apply the best-interests test when determining custody between her and the father. We disagree. Although the court did not use the term "bests interests," the court did find that the mother was both unable and unsuitable to have custody of Ja'Shawn because she suffered from attention-deficit disorder, could not read well, did not understand the needs of her children, and, up until one month before the custody trial, smoked marijuana on a daily basis. There was ample evidence produced at trial to support these findings.
We note that the mother does not argue that she should have custody of Ja'Shawn, but that custody of Ja'Shawn should be granted to the grandmother. To support her contention, she maintains that the father is unsuitable to parent Ja'Shawn.
In determining custody between a parent and a non-parent, the court must balance a suitable natural parent's protected right to custody of his or her minor child with the best interests of the child. Thus, "parents may be denied custody only if the preponderance of the evidence indicates abandonment, contractual relinquishment of custody, total inability to provide care or support, or that the parent is otherwise unsuitable — that is, an award of custody would be detrimental to the child."[9] The mother argues that the father should have been found unsuitable because he relinquished custody of Ja'Shawn and because an award of custody to him was detrimental to Ja'Shawn. We disagree.
The record demonstrates that the father did not relinquish custody of Ja'Shawn. In fact, the mother testified that she and the father were sharing custody of Ja'Shawn, and the record reflects that the father would drive her and Ja'Shawn to the hospital and the doctor's office when he was not working. (Ja'Shawn has serious asthma problems.) Additionally, the record supports the court's finding that it would not be detrimental to Ja'Shawn if the father was granted custody. Although the father was convicted of possession and distribution of cocaine in 1993 and 1996, he has not had legal problems in the past nine years. He is gainfully employed, married and living in a home owned by his wife. Additionally, Ja'Shawn has bonded with his father, his stepsister and their extended family. The father's aunt testified that she would take Ja'Shawn on vacation with her to Detroit to visit his paternal grandmother.
After finding that the Father was a suitable parent, the court noted that the grandmother was also an appropriate caretaker and had a close bond with Ja'Shawn. Further, the court found that both the grandmother and the father were able to provide for Ja'Shawn's special asthma needs, and that both had appropriate housing, incomes, lifestyles, parenting skills, and extended families to whom Ja'Shawn had bonded. Because both would be appropriate caretakers, we see no error in the court awarding custody to the father, the parent, with substantial parenting time granted to the grandmother, the non-parent.
Because the juvenile court employed the correct legal standard in determining custody, we overrule the mother's five assignments of error.
We now turn to the grandmother's single assignment of error, in which she argues that the custody determination was against the manifest weight of the evidence.
In the review of a trial court's judgment in a child-custody case, the appropriate standard focuses on whether the trial court has abused its discretion.[10] An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable.[11] "The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record."[12]
A review of the record in this case indicates that there was competent, credible evidence to support the juvenile court's award of custody to the father.[13] We note that the grandmother was also awarded substantial parenting time, and that the joint parenting that was occurring prior to this custody action is in essence continuing. Accordingly, we hold that the juvenile court did not abuse its discretion in awarding custody to the father. We overrule the grandmother's assignment of error and affirm the judgment of the juvenile court.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Hildebrandt, P.J., Gorman and Painter, JJ.
[1] The mother's assignment of errors are as follows: "(1) the trial court erred by applying the wrong standard of law in changing custody to father; (2) the trial court erred by failing to consider the custodial history of the child and not applying the corresponding legal standard; (3) the trial court erred by failing to hold a bifurcated hearing to determine the threshold issues of unsuitability or change of circumstances; (4) the trial court erred by failing to apply the proper legal standard of unsuitability as to father; and (5) the trial court erred by failing to apply the best interest of the child standard to determine an award of custody."
[2] See R.C. 3109.04(E)(1)(a).
[3] See R.C. 2151.23(F)(1).
[4] (1984), 18 Ohio App.3d 95, 481 N.E.2d 646.
[5] Id. at 96-97.
[6] (1981), 66 Ohio St.2d 334, 421 N.E.2d 1284.
[7] Id. at paragraph one of the syllabus.
[8] Id. at paragraph two of the syllabus.
[9] In re Perales (1977), 52 Ohio St.2d 89, 98, 369 N.E.2d 1047.
[10] Masters v. Masters, 69 Ohio St.3d 83, 1994-Ohio-483,630 N.E.2d 665.
[11] Miller v. Miller (1988), 37 Ohio St.3d 71, 73, 523 N.E.2d 846.
[12] Id. at 74, citing Trickey v. Trickey (1952), 158 Ohio St. 9, 13,106 N.E.2d 772.
[13] C.E. Morris Co. v. Foley Const. Co. (1978), 54 Ohio St. 2d 279,376 N.E. 2d 578, syllabus ("judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence).