DECISION
{¶ 1} Defendant-appellant, Fran Fish ("Fish"), appeals from a judgment entered by the Franklin County Court of Common Pleas in favor of plaintiff-appellee, Kemba Financial Credit Union ("Kemba"). Based upon our review of the record and submitted briefs, we uphold the trial court's judgment.
 {¶ 2} During 2003, Fish obtained three separate loans from Kemba. By March 2004, she had defaulted on all three, resulting in the repossession and sale of the collateral property. On or about February 8, 2003, Fish obtained the first loan — a VISA credit card with a credit limit of $3,500. Fish originally exceeded the limit on the card in June 2003. Subsequent payments brought the balance back under her credit limit; however, Fish again exceeded her limit in October 2003. On October 29, 2003, Kemba received the last payment Fish made toward the balance of her VISA account. Two days later, Fish again exceeded the limit of her VISA card, but made no further payments. On December 8, 2003, Kemba sent Fish the first of three notices advising her that her VISA account was delinquent.
 {¶ 3} On June 12, 2003, Fish took out a second loan from Kemba. Designated as Loan 54, this loan was unsecured in the amount of $1,741.23. Payment amounts were set at $98.61. (Exhibit No. B-3.) Kemba issued its first delinquency notice for Loan 54 on December 8, 2003. On March 5, 2004, Kemba received its last payment from Fish for Loan 54 in the amount of $24.66. At that time, the loan was still delinquent in the amount of $113.64.[1]
 {¶ 4} On October 16, 2003, Kemba issued a third and final loan for $11,792.48 to Fish to purchase a 2003 Kia Rio. The vehicle was secured as collateral for the loan with monthly payments set at $269.05. Although Fish made several payments toward the vehicle during January 2004, she made only one payment of $67.27 in February 2004. All subsequent payments were deemed arrearage payments and none were sufficient to bring the loan out of delinquency. Fish made a final payment toward her vehicle loan on March 12, 2004 in the amount of $48.18.
 {¶ 5} Between September 6, 2003 and April 4, 2004, Kemba sent numerous notices and made phone calls to Fish to inform her that she was delinquent on her loans. On March 3, 2004, Kemba dispatched an agent to repossess the Kia Rio. Fish assaulted the agent, who left without further altercation. Both parties filed police reports, but no criminal charges ensued. Kemba's agent successfully repossessed the vehicle without incident on March 18, 2004.
 {¶ 6} On March 23, 2004, Kemba sent Fish a certified letter, notifying her that she owed a total of $13,298.88 on the vehicle and that she was $220.87 past due. Kemba advised Fish that, if she did not pay the total balance by April 4, 2004, the vehicle would be sold at public auction on April 13, 2004 at Columbus Fair Auto Auction, 4700 Groveport Road, Columbus, Ohio. Fish did not respond to Kemba's letter or attend the auction to attempt to buy the vehicle back.
 {¶ 7} Although Kemba attempted to auction the vehicle at a public sale, the bids were not as high as anticipated. The vehicle was then placed in front of the Kemba office building with a "For Sale" sign on public display, where it sold for $6,770. Kemba deducted $335.04 in repossession fees and applied the remaining $6,435 to Fish's loan balance.
 {¶ 8} On February 27, 2004, Kemba filed a complaint against Fish for payment of the remaining balances of her three loans totaling $13,471.64 plus interest at 12.5 percent per annum. Fish filed her answer and counterclaim. In her first counterclaim, Fish stated that her transactions with Kemba were subject to R.C. Chapters 1309, 1317, and 1345. As such, Fish claimed that Kemba's actions were "deceptive, unfair, and unconscionable, in violation of Ohio Revised Code Chapter 1345, and other applicable laws." (Defendant's Answer and Counterclaim, ¶ 25.) In her second counterclaim, Fish claimed that the loan she signed on October 16, 2003 violated R.C. 1317.06(C) and 1345.02(B).
 {¶ 9} Trial was originally scheduled for March 8, 2005. However, Fish sought and was granted a continuance until June 13, 2005. Proceedings were continued several more times due to scheduling conflicts of the court and attorneys. A final trial date was set for October 31, 2005. Fish failed to appear on the morning of October 31, 2005. Over Kemba's objections, the trial court granted one last continuance. The trial court made it clear that no further continuances would be granted and that the case would either be tried or resolved on November 9, 2005.
 {¶ 10} Fish again failed to appear on the morning of trial on November 9, 2005. Her counsel stated that he received a voicemail from Fish the previous afternoon. Fish informed him that her son was scheduled for an expulsion hearing at the same time as trial. However, Fish did not say whether she intended to be in court for the trial. Counsel again requested a continuance, noting that he assumed she was at her son's hearing. The motion was denied, and the case proceeded to trial before the court. Counsel for Fish did not call any witnesses or present any evidence on Fish's behalf.
 {¶ 11} The parties submitted post-trial briefs and the trial court rendered a decision on January 16, 2006. The trial court held that the enforceability of the cross-collateral clauses contained in Fish's unsecured loans were irrelevant because all of the loans were in default long before Kemba held that the auction and sale of the vehicle were commercially reasonable even though Kemba removed the vehicle from the auction. The court noted that Kemba provided sufficient notice of the auction in its certified letter to comply with the requirements of R.C.1309.613. The subsequent sale of the vehicle was also commercially reasonable given the significantly higher price that it sold for. The trial court awarded Kemba $15,295.55, plus interest and costs.
 {¶ 12} Fish timely appealed and asserts two assignments of error:
 [I.] The Franklin County Common Pleas Court committed reversible error by granting judgment for plaintiff on all counts where the creditor (plaintiff-appellee) could not demonstrate that it met its burden of demonstrating that its actions in this consumer transaction establish that the collection, enforcement and/or disposition of the collateral was accomplished in a commercially reasonable manner, in compliance with ORC §§ 1309.601 to 1309.628, inclusive, after the debtor (defendant-appellant) has placed the secured party's compliance into issue, notwithstanding the trial court's declaration that the fact that a "significantly higher price" was obtained indicated the "commercial reasonableness" of the consumer transaction.
 [II.] The Franklin County Common Pleas Court [sic] action in unreasonably denying defendant-appellant's motion for continuance of the trial to the court when the basis for the request was the fact that defendant was unavoidably absent due to her exercising the Hobson's choice of attending her minor son's expulsion hearing from the Columbus Public School District, scheduled for the same date and time, would be an abuse of the court's discretion to control the conduct of its docket.
 {¶ 13} Fish argues for the first time on appeal that Kemba violated the statutory provisions of R.C. 1309 that govern the repossession and resale of collateral property after default. Specifically, Fish asserts that Kemba breached the peace when repossessing her vehicle and failed to provide adequate notice of resale. In her first counterclaim, Fish noted that "the underlying transaction, being a consumer transaction involving consumer goods, is subject to the requirements and restrictions of Ohio Revised Code, Chapters 1309, 1317, and 1345, as well as applicable federal law." (Defendant's answer and counterclaim, at ¶ 24.) Fish claimed that Kemba's actions violated R.C. Chapter 1345. However, she never asserted that Kemba failed to comply with R.C. Chapter 1309 until now.
 {¶ 14} Civ.R. 8(A) mandates that "[a] pleading that sets forth a claim for relief * * * shall contain (1) a short and plain statement of the claim showing that the party is entitled to relief[.]" In her counterclaim, Fish did not assert that Kemba had violated any requirements of R.C. Chapter 1309. Moreover, she did not set forth any facts to suggest any such violations occurred. Fish's first assignment of error does not comply with Civ.R. 8(A) and we need not consider it.
 {¶ 15} Assuming Fish had properly pled and argued that Kemba failed to comply with the statutory requirements of R.C. Chapter 1309, Kemba provided sufficient evidence at trial to rebut her accusations. It is undisputed that the agent Kemba dispatched to repossess appellant's vehicle was involved in an altercation with appellant. However, it is also undisputed that the agent was able to peacefully and uneventfully repossess the vehicle at a later date. Therefore, Fish may not rest her case on the argument that Kemba's agent breached the peace when he repossessed the vehicle. Fish's assertion that her previous altercation with Kemba's agent tainted the actual repossession and violated R.C.1309.609 for breaching the peace is an unreasonable conclusion wholly unsupported by the facts or case law.
 {¶ 16} Furthermore, Kemba provided sufficient evidence that it complied with the notice requirements of R.C. 1309.613. R.C.1309.613(A)(1)(e), requires that the notification "[s]tates the time and place, by identifying the place of business or address or by providing other information that, in each case, reasonably describes the location, of a public disposition or the time after which any other disposition is to be made." R.C. 1309.613(A)(3) only requires that a notice of sale provide substantially all of the information listed in R.C.1309.613(A)(1).
 {¶ 17} At trial, Kemba submitted a copy of the certified letter sent to Fish, notifying her of the date and place of the vehicle's auction. Although the letter did not specify the time at which the vehicle was scheduled to be auctioned, Fish could easily have obtained that information if she intended to participate in the auction. The code arguably does not require that a notice contain the specific sale time; only that there be sufficient detail for the person on notice to discover the time of sale. Kemba notified Fish of the date, place and address for the sale. The trial court held that the notice substantially complied with R.C. 1309.613(A)(1) because Columbus Auto Fair maintains regular business hours. We note that Fish did not produce any evidence that she was prejudiced by Kemba's failure to provide a time of sale. Failure to provide the time of the auction does not render the notice invalid based upon the facts of this case.
 {¶ 18} Fish also argues that Kemba was required to notify her when the initial auction failed to produce an adequate bid and the car was subsequently offered at a private sale. Nevertheless, Fish fails to demonstrate she was prejudiced by the subsequent sale. The subsequent sale generated more money than the minimum bid required but not obtained at the noticed initial auction. Because the evidence demonstrates Fish was neither willing to attend nor financially able to purchase her car at the noticed initial auction and because the evidence fails to undermine the conclusion that her car was sold for its fair market value in an arms length transaction between a willing buyer and willing seller, it is unreasonable to assume that Fish would have paid a higher price or Kemba would have sold her car for a higher price had Kemba properly notified Fish of the subsequent private sale. See R.C.1309.626(C) (limiting debtor's deficiency to "an amount by which the sum of the secured obligation, expenses, and attorney's fees exceeds the greater of: [1] The proceeds of the * * * disposition * * *; or [2] the amount of proceeds that would have been realized had the noncomplying secured party" properly notified the debtor of the disposition). Based on the foregoing, we overrule the first assignment of error.
 {¶ 19} In her second assignment of error, Fish contends that the trial court abused its discretion by denying her motion for a continuance. Loc.R. 79 of the Franklin County Court of Common Pleas requires that a motion for continuance be in writing unless waived by the trial judge. Civ.R. 5(A) further mandates that the motion must be served upon the opposing party. The Rules of Superintendence for the courts of Ohio reiterate these requirements. However, Sup.R. 41(A) permits a trial court to waive these requirements upon a showing of good cause. The final determination of whether to grant a continuance is within the sound discretion of the trial court.
 {¶ 20} In determining whether to grant a continuance, the trial court must weigh its own interest in managing its docket with the "public's interest in the prompt and efficient dispatch of justice." State v.Unger (1981), 67 Ohio St.2d 65, 67. We may reverse the trial court's decision to deny a request for continuance only upon a showing that the trial court abused its discretion. Id. The court in Unger stated that:
 In evaluating a motion for a continuance, a court should note, inter alia: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case. * * *
Id. at 67-68.
 {¶ 21} The number of continuances requested and granted in this case is dispositive. The cumulative whole of the circumstances surrounding Fish's requests are speculative and do not constitute sufficient cause for us to reverse the trial court's decision. The trial court continued proceedings five times between January 18, 2005 and October 31, 2005. Fish requested and was granted three of those continuances. The trial court had previously granted one continuance because Fish simply neglected to appear on the date scheduled for trial. At that time, the court made it clear that no further continuances would be granted and that the case would proceed as scheduled.
 {¶ 22} On the second scheduled trial date, counsel for both parties and witnesses for Kemba appeared as scheduled. Fish again failed to appear. Her counsel stated that appellant was attending her son's expulsion hearing, scheduled for the same day and time by the Columbus Board of Education. However, counsel indicated that he expected she would arrive for trial after the hearing concluded. The court denied counsel's motion for a continuance and proceeded with the trial.
 {¶ 23} Fish claims she was given a "Hobson's choice" between attending her son's hearing or trial. We disagree. There is nothing in the record to suggest that Fish did, in fact, attend her son's expulsion hearing. Her counsel advised the court that she had informed him of the hearing and that her absence at trial led him to believe that she was at the expulsion hearing.[2] However, even her counsel could not conclusively say that Fish was not at trial because she was at her son's expulsion hearing; nor did he present evidence after trial to substantiate Fish's claim that she was at her son's hearing. Fish did not file a Civ.R. 60(B) motion, requesting that the court set aside the judgment in light of the circumstances. Fish had sufficient opportunity to demonstrate that she was where she claimed to be on the day of trial, but did not do so. Therefore, we find that the trial court acted within its authority in denying Fish's request for a continuance.
 {¶ 24} Based upon the foregoing, we overrule Fish's assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
BRYANT and McGRATH, JJ., concur.
[1] The loan agreements for the VISA account and unsecured loan contained cross-collateral clauses. Under the terms of the clauses, those particular loans would be accelerated if Fish defaulted on those or any other loans held by Kemba. Fish's arguments challenging the validity and fairness of the clauses are moot for purposes of this action. Fish had already defaulted on all three loans when Kemba repossessed her vehicle as collateral. Her loans were not accelerated under the cross-collateral clauses.
[2] Counsel stated to the court that "[a]s the Columbus Board of Education declined to continue the expulsion hearing for this morning, I'm going to assume, not having heard otherwise, that she went to the expulsion hearing to attempt to protect the rights of her son. I have not heard from her. I would expect her to show up if she gets done early." (Tr. at 8.)