OPINION
{¶ 1} Defendant-appellant, Stephanie Hatfield ("Stephanie" or "appellant"), appeals the decision of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch ("juvenile court"), granting permanent custody of her son, Matthew Anderton, to plaintiff-appellee, James Marion Anderton ("Jim" or "appellee"). We affirm the juvenile court's decision.
 {¶ 2} Stephanie and Jim are the parents of Matthew, born October 29, 1998. Stephanie and Jim were never married, but resided together for approximately three years. When Matthew was about one year old, they separated. Jim established paternity *Page 2 
in September 2000 and, at that time, moved for custody of Matthew and that he be designated as the residential parent. In April 2001, the juvenile court issued a temporary order designating both parents as Matthew's residential parent and legal custodian. They were given alternating weeks of residential parenting time with Matthew. In May 2001, Stephanie moved for custody of Matthew and that she be designated as the residential parent.
 {¶ 3} A guardian ad litem ("GAL") was appointed in January 2002 and, after several continuances, a hearing was scheduled for August 13, 2002 before a magistrate. At the hearing, the GAL and counsel for appellee jointly moved for a continuance of the hearing on grounds that, on the morning of the hearing, the GAL received information that required him to investigate. Over the objection of appellant, the magistrate granted the continuance.
 {¶ 4} In January 2004, a magistrate heard both motions for custody. At the end of the proceedings, the magistrate instructed the GAL to submit his report and recommendation to the court several weeks later. Apparently, because of several health issues, the GAL was unable to submit his report in a timely fashion. In August 2004, the GAL moved for leave to submit additional evidence on grounds that some relevant information had recently come to his attention.
 {¶ 5} At a September 23, 2004 hearing, the magistrate granted the GAL's motion. The magistrate held that the record was still open and that it was in the best interest of Matthew to hear additional evidence. The magistrate heard the additional evidence in October and, on October 8, 2004, conducted an in camera interview of Matthew. Written closing arguments were submitted in late October. *Page 3 
 {¶ 6} In January 2005, the magistrate issued her written decision. In her decision, the magistrate sustained Jim's motion for custody and denied Stephanie's motion for custody. Jim was designated Matthew's residential parent and legal custodian and Stephanie was granted parenting time pursuant to local court rule and as the parties may agree.
 {¶ 7} Stephanie timely objected to the magistrate's decision. In May 2005, Stephanie filed an amended objection. On February 6, 2007, the juvenile court overruled Stephanie's objections and adopted the magistrate's decision. Stephanie timely appealed the decision of the juvenile court, presenting the following six assignments of error:
 ASSIGNMENTS OF ERROR
 I. The Trial Court Erred In Overruling Appellant's Objections To Continue The Hearing Set On August 13, 2002.
 II. The Trial Court Erred In Overruling Appellant's Objections To The GAL/Appellee's Motion To Reopen The Case Filed August 6, 2004 [Seven (7) Months After The Final Hearing Was Held.] In Violation Of Appellant's Constitutional Rights Under The Due Process And Equal Protection Provisions Of The United States And Ohio Constitutions In regard To The Following Grounds: (1) Fundamental Unfairness And (2) Denial Of The Equal Protection Of The Laws.
 III. The Trial Court Erred In Overruling Appellant's Objections To The Granting Of "Ex Parte" Extensions To The GAL/-Appellee To Prepare The GAL Report Outside The Presence Of Appellant Or Her Counsel Without Notice To Appellant Or Her Counsel And Without The Opportunity To Be Heard In Violation Of Appellant's Procedural Due Process Rights Pursuant To The Due Process And Equal Protection Provisions Of The United States And Ohio Constitutions.
 IV. The Trial Court Erred In Not Considering Appellee's Act Of Tainting The Child's Wishes As Shown By The Transcript Of The Child Interview Conducted On October 8, 2004. *Page 4 
 V. The Trial Court's Decision Is Against The Manifest Weight Of The Evidence; Is Not Supported By Sufficient, Probative Evidence; Is Contrary To The Law; And Is Further Contrary To The Best Interest Of The Child.
 VI. The Trial Court Erred In Denying Appellant's Oral Motion To Dismiss Made On January 6, 2004 On The Basis That Appellee Failed To Sustain His Initial Burden Of Proof Regarding His Fitness To Be The Custodial Parent.
 {¶ 8} In appellant's first assignment of error, appellant argues that the magistrate abused her discretion in granting a continuance over appellant's objection. According to appellant, because neither the GAL nor appellee had performed any discovery prior to the August 13, 2002 hearing, it was an abuse of discretion to grant a continuance on grounds of recently received information. We disagree.
 {¶ 9} The juvenile court overruled appellant's objection to the continuance in its February 6, 2007 decision and entry. In its decision, the juvenile court explained that the transcript of the August 13, 2002 hearing shows that the request for a continuance was for legitimate reasons. The transcript discloses that the GAL told the magistrate that, present in the courtroom was Stephanie's acquaintance who had allegedly served a prison sentence "for some serious criminal charges." (Tr. at 3.)
 {¶ 10} In its decision, the juvenile court observes that "consideration of individuals involved in Stephanie's life who may come in contact with Matthew are essential to the Guardian's recommendation and the court's determination of what is in Matthew's best interests." Id. at 4.
 {¶ 11} Recently, in Kemba Financial Credit Union v. Fish, Franklin App. No. 06AP-195, 2007-Ohio-43, at ¶ 20, we quoted from State v.Unger (1981), 67 Ohio St.2d 65, 67-68: *Page 5 
 "In evaluating a motion for a continuance, a court should note, inter alia: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case. * * *"
 {¶ 12} In its decision, the juvenile court applied the above-quoted language from Kemba Financial in overruling appellant's objection to the continuance.
 {¶ 13} We find that the juvenile court did not abuse its discretion in applying Kemba Financial and Unger in determining to overrule appellant's objection. The juvenile court fully considered appellant's failure of discovery argument, but, nevertheless, determined that Matthew's interests required that the continuance be granted. We therefore overrule appellant's first assignment of error.
 {¶ 14} We now address appellant's second assignment of error. According to appellant, the magistrate "reopened" the case when she granted the GAL's August 6, 2004 motion for leave to submit additional evidence. Appellant claims that the "reopening" constitutes "undue surprise," gave the appellee a "second bite of the apple," and violates the "principle of finality." Appellant also claims that the hearing of the additional evidence constitutes an "extreme waste of time and resources." Appellant further asserts that the seven months between the January 2004 hearing and the August 2004 motion is "`[p]er se' too long." (Appellant's brief, at 5-6.) We disagree with the import of appellant's claims and assertions regarding the granting of the GAL's motion.
 {¶ 15} Appellant cites to In re Sullivan, Butler App. No. CA2002-03-061, 2003-Ohio-195, and then endeavors to distinguish that case from the instant one in arguing that *Page 6 
the juvenile court abused its discretion in overruling appellant's objection to the GAL's August 6, 2004 motion.
 {¶ 16} In Sullivan, as in this case, the appellant, Antoine Sullivan, appealed the juvenile court's granting of permanent custody. The juvenile court granted custody of Antoine's daughter, Aaliyah, to the Butler County Children's Services Board ("BCCSB"). The appellate court affirmed the juvenile court's decision.
 {¶ 17} In November 2000, the juvenile court heard BCCSB's motion for permanent custody of Aaliyah and two older children of Tina Sackenheim (Aaliyah's mother), with whom Antoine had resided for a period of time prior to and after Aaliyah's birth. Prior to the filing of the parties' closing arguments, BCCSB filed a "Motion to Reopen Permanent Custody Proceedings" based upon the discovery of new evidence. BCCSB submitted an affidavit signed by a BCCSB caseworker describing the new evidence. In the affidavit, the caseworker claimed that Antoine had another child, a son, a fact that Antoine had concealed from the court. The affidavit alleged that Antoine's son had previously made sexual abuse allegations against Antoine and Antoine's brother. The affidavit further alleged that Antoine's son had perpetrated sexual abuse and had recently been released to Antoine's care. The juvenile court granted BCCSB's motion, extending the hearing and allowing BCCSB to present additional testimony.
 {¶ 18} In his appeal to the Twelfth District Court of Appeals, Antoine assigned as error the juvenile court's granting of BCCSB's motion to reopen. In overruling Antoine's assignment of error, the appellate court explained:
 * * * Appellant argues that the juvenile court's re-opening of the permanent custody proceedings is akin to granting a new trial based on newly discovered evidence. Therefore, *Page 8 
appellant argues that we should apply the standard set forth in Sheen v. Kubiac (1936), 131 Ohio St. 52, * * * and determine that the juvenile court erred in granting BCCSB's motion. Under Sheen, a court can grant a new trial only if (1) the new evidence will probably change the result of the trial; (2) the new evidence has been discovered since the trial; (3) the new evidence could not have been discovered by due diligence prior to the trial; (4) the new evidence is material; (5) the new evidence is not merely cumulative to former evidence; and (6) the new evidence does not merely impeach or contradict the former evidence. Id.
 We do not find that BCCSB's motion was akin to a motion for a new trial. BCCSB was not asking the court for a new hearing but for the opportunity to present additional, newly discovered evidence within the same hearing.
 Appellant does not direct us to any relevant law indicating that the juvenile court's actions were improper and we find nothing improper in the juvenile court's granting of BCCSB's motion. * * *
Id. at ¶ 9-11.
 {¶ 19} Here, appellant argues that the Sullivan case did not present a lengthy delay as occurred in this case. Also, appellant points out that, unlike Sullivan, there was no allegation that appellant concealed a material fact. While there are indeed factual differences between theSullivan case and this case, those differences do not compel the conclusion that the juvenile court in this case abused its discretion in granting the GAL's August 6, 2004 motion.
 {¶ 20} We disagree with appellant's contention that the GAL's August 6, 2004 motion was akin to a motion for new trial. The GAL did not ask for a new hearing, but sought leave to present additional newly discovered evidence within the same hearing.
 {¶ 21} Moreover, in its decision, the juvenile court appropriately explains why it overruled appellant's objection to the magistrate's decision to allow the GAL to present *Page 8 
additional evidence. The juvenile court observed that the GAL was concerned that the paternal grandmother, Edna Anderton, had suffered possibly two heart attacks in the summer 2004, and her ability to care for Matthew was called into question. The GAL was also concerned that Stephanie was evicted from her home on Bucher Street in late summer 2004, and was staying with friends on a temporary basis. Also, there was a concern about where Matthew was attending school.
 {¶ 22} The juvenile court, in its decision, determined that all of the GAL's concerns could have a significant impact on the evaluation of Matthew's best interest. Although noting that the delay between the close of the parties' cases and the GAL's submission of the report is "troubling," the juvenile court, nevertheless, held that the magistrate did not err in allowing the GAL to present additional evidence. The juvenile court further noted that the parents had an opportunity to cross-examine the GAL concerning his recommendation once his report was submitted.
 {¶ 23} The juvenile court stated that it was unable to see how Stephanie was unduly surprised because she received notice of the GAL's motion, and her attorney was able to present arguments against the GAL's motion at the September 23, 2004 magistrate's hearing. When the case was called back to court for the GAL's witnesses to testify on October 4, 2004, Stephanie's attorney was able to cross-examine the GAL's witnesses and was able to present her own witnesses as well. The juvenile court properly held that Stephanie was not denied due process of law or equal protection of the laws.
 {¶ 24} We find that the juvenile court properly overruled Stephanie's objection to the granting of the GAL's August 6, 2004 motion. Accordingly, appellant's second assignment of error is overruled. *Page 9 
 {¶ 25} We now address appellant's third assignment of error. In its decision, the juvenile court addressed the issue raised in this assignment of error. As the juvenile court notes, the transcript of the September 23, 2004 magistrate's hearing discloses the following statement of the magistrate:
 * * * We tried this case, took testimony some time back and we're in a position where we still needed a guardian ad litem report. For various reasons, some health problems and scheduling problems that had not come in. The guardian ad litem report has not been submitted and the GAL filed this motion prior to submitting any report. * * *
(Sept. 23, 2004 Tr., at 2-3.)
 {¶ 26} The trial transcript further discloses that the magistrate stated:
 There was a guardian ad litem report due and closings due, and there was some issues that Mr. Silvestri had, some health issues that prevented the guardian ad litem report from coming in.
(Jan. 5, 2004 Tr., at 271.)
 {¶ 27} After noting the above statements from the magistrate, the juvenile court held:
 Even if these statements can be construed to refer to ex parte grants of extensions, the setting of due dates is a procedural matter that does not involve the substantive issues of a case. As such it is appropriate for a Magistrate to address the possibility of an extension with the Guardian ex parte. Neither a due process nor an equal protection violation occurred. Stephanie's objection on this ground is overruled.
Id. at 6.
 {¶ 28} According to appellant, the magistrate's recorded statements show that the magistrate had ex parte discussions with the GAL regarding the granting of extensions of time for the filing of the GAL report. Appellant's counsel asserts that he was never *Page 10 
notified of those discussions. Appellant asserts that: "It is well-established that granting oral motions of one party outside the presence of as well as without notification to other parties by a judicial officer violates fundamental tenets of procedural due process." (Appellant's brief, at 8.) However, appellant does not cite to this court any case authority to support her proposition of law.
 {¶ 29} Canon 3(B) states:
 (7) A judge shall not initiate, receive, permit, or consider communications made to the judge outside the presence of the parties or their representatives concerning a pending or impending proceeding except:
 (a) Where circumstances require, ex parte
communications for scheduling, administrative purposes, or emergencies that do not address substantive matters or issues on the merits are permitted if the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte
communication.
 {¶ 30} Based on Cannon 3(B), we find that the juvenile court appropriately determined the matter and did not err in overruling appellant's objection. There is no evidence that any party obtained a procedural or tactical advantage as a result of any ex parte communication between the magistrate and the GAL. See McDermott v.Tweel, 151 Ohio App.3d 763, 2003-Ohio-885.
 {¶ 31} Accordingly, we overrule appellant's third assignment of error.
 {¶ 32} We now address appellant's fourth assignment of error. In its decision, the juvenile court addressed this issue in overruling appellant's objections to the magistrate's decision. The transcript of the magistrate's October 8, 2004 interview of Matthew shows the following exchange: *Page 11 
 THE MAGISTRATE: Okay. If you had to choose if you wanted to live with your mommy at her house or your daddy at his house most of the time, which one would you pick?
 MATTHEW: My dad and my mom. Both of them.
 THE MAGISTRATE: You would like to stay with both of them? If you had to pick one to go to school to live at their house, just to go to school, which would you pick?
 MATTHEW: My dad, because I have to.
 THE MAGISTRATE: Why?
 MATTHEW: Because if I quit school there, they'll kick my dad's butt.
 THE MAGISTRATE: They would kick you dad's butt if you quit school?
 MATTHEW: Yeah.
(Child Interview Tr., at 15.)
 {¶ 33} Noting the above-quoted portion of the transcript, the juvenile court, in its decision, stated that "[considering the statements in context, this court does not find that the statements show Jim influenced Matthew's wishes." Id. at 9.
 {¶ 34} Here, appellant disagrees with the juvenile court, arguing:
 * * * How could a child of that age utter such a statement without being influenced by an adult[?] The obvious conclusion is that Appellee had to tell his child that for the very purpose of influencing his wishes. The Trial Court should have taken Appellee's conduct into consideration in its decision.
(Appellant's brief, at 9.)
 {¶ 35} That the above-quoted portion of Matthew's interview can be read to show that Jim influenced Matthew's statement to the magistrate does not compel the *Page 12 
conclusion that the magistrate or the juvenile court failed to appreciate or consider that Matthew's statement may have been the result of his father's influence.
 {¶ 36} In the magistrate's decision, the magistrate describes the interview as follows:
 The court conducted an in-camera interview of Matthew at the written request of Mother. After questioning of Matthew, the Court determined that Matthew is of sufficient reasoning ability to express some of his wishes and concerns to the Court, even though Matthew's reasoning ability is extremely basic at this time. It was made very clear to the Court by the minor child that he loves both his parents and desires to spend as much times as possible with both Mother and Father.
 {¶ 37} There is no evidence in the record that the magistrate or the juvenile court was unduly persuaded to rule in Jim's favor on his custody motion because of Matthew's statement that he would pick his dad's house as the place to live to go to school. The magistrate's decision indicates that, from the interview, the magistrate concluded that Matthew loves both of his parents and desires to spend as much time as possible with both.
 {¶ 38} Clearly, the juvenile court did not err in overruling appellant's objection regarding the alleged tainting of Matthew's interview. Accordingly, we overrule appellant's fourth assignment of error.
 {¶ 39} We now address appellant's fifth assignment of error. R.C.3109.04(F)(1) provides a nonexclusive listing of relevant factors that the juvenile court shall consider in determining the best interest of a child for purposes of allocating parental rights and responsibilities for the care of the child. *Page 13 
 {¶ 40} In her decision, the magistrate addressed each of the statutory factors before concluding that it was in Matthew's best interest to designate Jim as the residential parent and legal custodian.
 {¶ 41} In its decision, the juvenile court commented that the magistrate was "extremely thorough in her findings regarding all of the applicable factors of R.C. 3109.04(F)(1)." Id. at 10. The juvenile court adopted the magistrate's findings of fact and conclusions of law concerning Matthew's best interest. The juvenile court also held that the magistrate's decision was not against the manifest weight of the evidence, is supported by sufficient evidence, and is not contrary to Matthew's best interest. The juvenile court then overruled appellant's objection to the findings.
 {¶ 42} Here, under her fifth assignment of error, appellant objects to the magistrate's determination of many of the R.C. 3109.04(F)(1) factors as adopted by the juvenile court.
 {¶ 43} R.C. 3109.04(F)(1)(c) provides that the court shall consider as a relevant factor "[t]he child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest." Under this factor, the magistrate made several determinations. Matthew has a half-sister named Brandy who was eight years old at the time of the magistrate's decision. When at his mother's, Matthew spent significant time with Brandy. However, since late August 2004, Brandy has been permitted to live with her natural father by agreement of Brandy's father and Stephanie. The magistrate notes that Stephanie asserted that this arrangement was only for the "current" school year and was borne of necessity and will terminate sooner if Brandy's grades are unsatisfactory to Stephanie. The magistrate determined that: *Page 14 
 * * * Stephanie was required to allow Brandy to live at her father's at the end of August 2004 because she was evicted from her residence at * * * Bucher St., Columbus, Ohio and did not have appropriate arrangements to permit Brandy to relocate with Stephanie at maternal grandmother's home. Mother does not have alternative housing with room for Brandy and the likelihood that Brandy will be able to return to Mother's care anytime soon seems quite slim. While Stephanie and Jim believe Matthew's relationship with Brandy is positive, with Brandy gone from Mother's home, that relationship is no longer being fostered by Mother.
 {¶ 44} Here, appellant challenges the magistrate's findings regarding Matthew's relationship with Brandy by pointing to appellant's testimony in the transcripts. Appellant testified that Matthew is well bonded to Brandy and that appellant has been the primary caretaker of Brandy since birth. Appellant reemphasizes that if Brandy does not do well in the school where her father lives, appellant will bring her back to her home. Also, Stephanie's mother, Patricia, testified that Brandy is always at her home when Matthew is present.
 {¶ 45} Appellant has not shown that the magistrate's factual determinations about Matthew's relationship with Brandy are an abuse of discretion. The magistrate weighed the evidence before her, as did the juvenile court that adopted the magistrate's decision. While appellant is entitled to her view of the evidence, the juvenile court was not required to adopt appellant's view.
 {¶ 46} The magistrate made further findings regarding Matthew's relationship with his paternal grandmother, Edna Anderton, at whose home Matthew and his father "currently" live in Alexandria, Ohio in Licking County. The magistrate found that Ms. Anderton was initially capable of caring for Matthew full time when Jim was working, despite her advanced age. However, at the end of the trial, Ms. Anderton had suffered *Page 15 
two heart attacks within a two-month period and was hospitalized and placed in a nursing home after the first. The magistrate found:
 * * * It is undisputed that Ms. Anderton is incapable of providing care for Matthew as she used to. Father, Mother, and the GAL all believe that it is not in Matthew's best interests for Ms. Anderton to provide care for Matthew if she is caring for him alone. Matthew does have a significant relationship with his paternal grandmother, however, and Father is willing to foster that relationship without having Ms. Anderton as a child care provider at anytime.
 {¶ 47} Appellant challenges the magistrate's determination that Ms. Anderton was initially capable of caring for Matthew before her heart attacks. Appellant points to evidence that Ms. Anderton uses a cane to walk, has hearing, vision, and other problems.
 {¶ 48} Again, it is the magistrate and juvenile court who had the responsibility of weighing the evidence. There was no abuse of discretion in that regard. Moreover, given that the magistrate and the juvenile court determined that Ms. Anderton is no longer capable of caring for Matthew, the relevancy of Ms. Anderton's earlier health status is greatly diminished.
 {¶ 49} Appellant endeavors to further her argument regarding Ms. Anderton's health status by pointing out that it requires Jim to obtain a babysitter for Matthew while he is working. Appellant points out that Matthew has to be awakened early so that Jim can drop Matthew off at the babysitter, which appellant characterizes as a "stranger" to Matthew. Appellant asserts that she "does not have to work and therefore can directly care for and spend more quality time with Matthew." (Appellant's brief, at 13.) *Page 16 
 {¶ 50} The magistrate and the juvenile court adequately explained why it is in Matthew's best interest to reside with his father, even when it necessitates babysitting. Again, appellant simply invites this court to reweigh the evidence.
 {¶ 51} The magistrate further found that Stephanie had allowed Matthew to interact with a friend of Stephanie's named Jeff Crabtree who had served time in an Ohio prison "for taking his family hostage and shooting a handgun at Columbus police." While the magistrate found that Matthew has shown no ill effects from his contact with Mr. Crabtree, the magistrate found that Stephanie showed a lack of good judgment in allowing this contact.
 {¶ 52} According to appellant, there is no "hard" evidence that Mr. Crabtree was continuously residing with appellant.
 {¶ 53} Clearly, there is evidence in the record to support the determination that appellant's association with Mr. Crabtree created a situation that is not in Matthew's best interest.
 {¶ 54} Appellant also objects to the juvenile court's determination regarding the maternal grandmother, Patricia Hatfield, contending that those conclusions are not supported by sufficient, probative evidence and are against the weight of the evidence.
 {¶ 55} Regarding Matthew's relationship with his maternal grandmother, the magistrate noted that her testimony was "very scant." However, she did testify that Matthew "comes in and says: Hi," and "goes about his business." (Tr. Vol. III, at 408.) Maternal grandmother further testified that Matthew's activity at her residence was largely playing outside alone. The magistrate found that "[u]nfortunately, evidence about the residence showed several rusty items of metal lying in the open, along with cars and car *Page 17 
parts." The magistrate concluded that this shows a lack of concern of maternal grandmother for Matthew's safety.
 {¶ 56} We find that the magistrate's findings regarding the maternal grandmother are supported by the record and are not against the manifest weight of the evidence.
 {¶ 57} R.C. 3109.04(F)(1)(d) provides that the juvenile court consider as a relevant factor "[t]he child's adjustment to the child's home, school, and community." Under this factor, the magistrate made several determinations.
 {¶ 58} As previously noted, Jim resides in Alexandria, Ohio with his mother and Matthew. The magistrate found that the home is adequate, although there is a wood burning stove in an open area of the living room. Matthew has burned himself on at least one occasion. Jim has told Matthew not to go near it again and Matthew has stayed away from the stove since. Matthew has his own bedroom and there is nothing inappropriate about the residence. The house is located on a lot with a very large backyard in which to play. The home is clean.
 {¶ 59} The magistrate expressed a "concern" that Jim took Matthew hunting when he was five years old. However, there is no evidence that Matthew ever had access to a firearm outside of this incident. Jim keeps all firearms in the home locked away from Matthew.
 {¶ 60} Appellant objects to what appellant calls the "minimal consideration" of the hunting event and Matthew's receiving a burn from the wood burning stove. Clearly, however, these incidents were considered and carefully weighed by the magistrate and the juvenile court. We disagree with appellant's characterization of "minimal consideration." Neither the magistrate nor the juvenile court were required to give those *Page 18 
incidents the weight that appellant argues should be the case. We find no abuse of discretion.
 {¶ 61} In her decision, the magistrate found that Stephanie's first residence at Bucher Street was extremely cluttered. The various rooms were really different areas without demarcation as to where one ended and another began, except for a kitchen area. Stephanie was evicted from her residence on Bucher Street by her brother in July 2004 for being in default of rent for about four months over two years of tenancy. Her brother rented the home to Stephanie at below market price as a courtesy. Stephanie's brother allowed her to fall in arrears several times without taking action. Even after her brother obtained the eviction writ, he still gave Stephanie additional time to stay and then he had to remove what appeared to be an inordinate amount of personal belongings. The landlord's examination after set-out revealed animal excrement, cockroaches and flea infestation. The magistrate concluded that because Stephanie has a poor record as a tenant, it will be difficult for her to find a suitable place to rent in the near future. Also, because she has no source of income outside of child support and handouts from friends and relatives, and she has taken no steps to secure employment, the magistrate concluded that Stephanie is without the financial means to rent another home.
 {¶ 62} The magistrate found that Stephanie currently resides at her parents' home on Curtis Avenue, in Columbus, Ohio. The front door opens directly into the area that was called "Stephanie's bedroom." The set-up of this room partially obstructed the pathway into the rest of the home. Additional evidence shows that there were several small clouds of flying insects. There were other such clouds visible throughout the room and walking area into the bathroom. Also, the kitchen area was unsanitary and there *Page 19 
were items all over the place, including the floor. There were more insects all about the kitchen area. Matthew's bedroom consisted of an open area with a small bed covered with more personal items and clothing. Stephanie testified the room was in the process of being made ready for Matthew, but Matthew had already made several visits to the residence. The magistrate concluded: Clearly, Mother had not yet created an environment appropriate to raise Matthew at her Mother's residence."
 {¶ 63} Here, appellant acknowledges that she had a "temporary setback" regarding her living arrangements at Bucher Street. Nevertheless, appellant claims that she is not doing anything different than appellee by living with her mother. Appellant points to her mother's testimony and her own that Patricia's home, school, and neighborhood are appropriate for Matthew.
 {¶ 64} Appellant objects to the magistrate's conclusion that she has no source of income outside of child support and has taken no steps to secure employment. Appellant also objects to the magistrate's consideration of Stephanie's failure to acquire a driver's license. According to appellant, she is no different than any other "housewife who has children." (Appellant's brief, at 16.) However, appellant's assertion is simply not at all supported by the record.
 {¶ 65} Again, it was the duty of the magistrate and the juvenile court to weigh the evidence. Clearly, there was no abuse of discretion in that regard.
 {¶ 66} R.C. 3109.04(F)(1)(f) provides that the juvenile court consider as a relevant factor "[t]he parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights."
 {¶ 67} For this factor, the magistrate's decision states: *Page 20 
 Mother presented evidence that in late August 2004, Jim failed and refused to return Matthew to Stephanie and that he enrolled Matthew is school in Alexandria, Ohio, all in contravention of the court-ordered parenting schedule. Specifically, Stephanie needed Jim to care for Matthew beyond the scope of the temporary orders issued by the Court in 2001. That order provided for shared custody with week-on, week-off parenting times schedules, and neither parent was specifically designated as Matthew's residential parent for school placement purposes. Stephanie needed Jim's help with Matthew because her eviction caused [her] to have to live with friends until she got settled into her mother's home.
 The period of time within which Stephanie needed Jim's help with Matthew carried over into the beginning of school and so Jim enrolled Matthew in Alexandria. Indeed, the court order gave both Stephanie and Jim "shared custody" which means Matthew could attend school at either parents' residence. Coupling all that with the apparent same situation that Stephanie had with Brandy, and the fact that Brandy was also placed with and remains with her father, James Anderton did not improperly dishonor the parenting time schedule. Further, the court order provided that each party was to do one-half of the driving for Matthew's parenting time. Stephanie did not travel to pick Matthew up during the time Matthew stayed with Father because she had no driver's license. Father did the majority of the driving required for parents to share custody, showing he was willing to do what was necessary to follow the Court's orders. No evidence exists that mother ever denied Father his court ordered parenting time.
 {¶ 68} Here, appellant challenges the magistrate's conclusion that Jim did not properly dishonor the parenting time schedule. Appellant points out that Jim never obtained court permission to enroll Matthew in school which had the effect of modifying the parenting time established in 2001 and denied appellant the benefit of the joint custody arrangement that preceded Matthew's enrollment in school.
 {¶ 69} We find that the magistrate's decision adequately explains the circumstances that resulted in Matthew's enrollment at a school in Alexandria, Ohio. *Page 21 
Those circumstances were largely the result of Stephanie's own circumstances resulting from her eviction. Neither the magistrate nor the juvenile court abused its discretion in consideration of this factor.
 {¶ 70} Accordingly, we overrule appellant's fifth assignment of error.
 {¶ 71} We now address appellant's sixth assignment of error. In its decision and entry, the juvenile court addressed the issue that appellant raises in her sixth assignment of error. The juvenile court stated:
 Section 3109.042 establishes an unmarried mother as the sole residential parent and legal custodian until an order of the court designates some other person the residential parent and legal custodian. R.C. 3109.042. However, the section also provides when the court considers which unmarried parent to designate the residential parent and legal custodian, the court "shall treat the mother and father as standing upon an equality." R.C. 3109.042. It is well-established that the court must apply the best interest test when allocating parental rights and responsibilities between two unmarried parents. In re Byrd (1981), 66 Ohio St.2d 334, 338 * * *; Anthony v. Wolfram (Sept. 29, 1999), 9th Dist. No. 98CA007129. Therefore, the Magistrate did not err in denying Stephanie's oral motion to dismiss. Jim did not have to prove his fitness as a suitable parent before the child's best interest could be determined. Stephanie's objection on this ground is overruled.
Id. at 11.
 {¶ 72} Appellant offers this court no authority other than that cited by the juvenile court. Appellant then declares that "[a]ppellee affirmatively established that he was an unfit parent." (Appellant's brief, at 19.)
 {¶ 73} Appellant's position lacks merit. The juvenile court appropriately deter-mined the applicable law and applied that law in denying appellant's motion to dismiss. *Page 22 
Also, appellant is incorrect in asserting that appellee affirmatively established that he was an unfit parent. Accordingly, we overrule appellant's sixth assignment of error.
 {¶ 74} Having overruled each of appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.
Judgment affirmed.
BRYANT and BROWN, JJ., concur.
BOWMAN, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution *Page 1