[Cite as *N.G. v. M.P.*, 2020-Ohio-554.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| NICKOLE G. | JUDGES: |
| | Hon. John W. Wise, P. J. |
| Plaintiff-Appellee | Hon. Craig R. Baldwin, J. |
| | Hon. Earle E. Wise, Jr., J. |
| -vs- | |
| | Case No. 2019 AP 08 0028 |
| MICHAEL P. | |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Civil Appeal from the Court of Common
Pleas, Juvenile Division, Case No. 2012
PA 00215


JUDGMENT:     Affirmed


DATE OF JUDGMENT ENTRY:     February 14, 2020


APPEARANCES:

For Plaintiff-Appellee     For Defendant-Appellant

RICHARD L. FOX     MICHAEL C. JOHNSON
122 South Wooster Avenue     117 South Broadway
Strasburg, Ohio 44680     New Philadelphia, Ohio 44663

Guardian Ad Litem

DONOVAN HILL
116 Cleveland Avenue, NW, Suite 808
Canton, Ohio 44702

*Wise, John, P. J.*

{¶1}   Appellant Michael P. appeals the decision of the Tuscarawas County Court of Common Pleas, Juvenile Division, which issued a modified shared parenting order concerning his son, T.P., age 8. Appellee Nickole G. is the child's mother. The relevant facts leading to this appeal are as follows.

### Prior Litigation

{¶2}   The juvenile court record in this matter commences with an administrative child support order submitted by the Tuscarawas County CSEA on or about September 19, 2012. Following an objection hearing, the magistrate in essence adopted the CSEA administrative order on December 19, 2012.

{¶3}   On August 26, 2013, appellant filed a *pro se* "motion to establish/modify visitation."

{¶4}   Via an agreed judgment entry issued on November 14, 2013, the juvenile court established *inter alia* a visitation schedule for appellant and T.P., essentially consisting of every other weekend.

### Shared Parenting Litigation

{¶5}   On August 5, 2016, appellant, with the assistance of counsel, filed a "motion to modify custody and for other relief," therein requesting *inter alia* his designation as residential parent, or, in the alternative, modification to a shared parenting plan, as well as a finding of contempt against appellee for alleged interference with the aforesaid visitation orders.

{¶6}   The matter was set for a hearing on September 20, 2016. However, the parties were able to come to an agreement, and on September 26, 2016, an "agreed

magistrate's order" was issued, which in pertinent part ordered standard parenting times under local court rules (essentially every other weekend), ordered a home study of appellee's residence, appointed Attorney Donovan Hill as guardian ad litem, and set the matter for further hearing on November 22, 2016.

{¶7} On November 30, 2016, as a result of said hearing, the magistrate issued an order stating that all current orders would remain in effect, with a status hearing to take place on December 15, 2016.

{¶8} In the meantime, on December 2, 2016, Appellee Nickole, with the assistance of counsel, filed a motion to review child support.

{¶9} Furthermore, on December 9, 2016, Appellant Michael filed a proposed shared parenting plan with the juvenile court.

{¶10} On December 22, 2016, the magistrate, based on the results of the December 15th status hearing, directed an evidentiary hearing to be held on February 6, 2017 on all pending issues. The hearing was continued until July 28, 2017 and went forward on that date.

{¶11} On December 15, 2017, having taken the matter under advisement, the magistrate issued a decision denying appellant's motion to modify custody, but setting issues of child support, the dependent tax exemption, and the proposed shared parenting plan for further hearing.

{¶12} On March 28, 2018, the magistrate issued a decision concerning child support and the tax exemption. The additional issues of shared parenting and/or companionship time were taken under advisement to allow the guardian ad litem to

update his report and recommendations. The juvenile court approved and adopted said decision via a judgment entry issued April 16, 2018.

{¶13} On April 19, 2018, appellant again filed a motion for contempt against appellee, in this instance alleging a failure to permit spring break companionship time. This was resolved via an agreed judgment entry issued May 31, 2018.

{¶14} Following a counsel-only "status hearing" on December 5, 2018, the magistrate issued an order on January 11, 2019, establishing a "5-2-2-5" shared parenting plan for the parties in accordance with the court's standard "Section C" companionship order.[1] The magistrate also set the matter for a review hearing on January 31, 2019.

{¶15} However, on January 15, 2019, appellee filed a motion to set aside the magistrate's order of January 11, 2019, along with a request for transcript. Appellant responded on January 16, 2019. The juvenile court subsequently found the motion to set aside to be without merit and dismissed same on February 7, 2019.

{¶16} In the meantime, a review hearing before the magistrate was conducted on January 31, 2019. The parties were unable to come to a resolution. Also, appellant filed a motion for contempt against appellee on February 1, 2019, regarding the 5-2-2-5 shared parenting magistrate's order.

{¶17} On February 12, 2019, appellant filed a motion for an "emergency hearing," claiming that appellee was trying to alter the parenting time schedule.

---

[1]  A 5-2-2-5 plan generally directs that the child spend time with Parent 1 for five days and Parent 2 for two days, followed by time with Parent 1 for two days and Parent 2 for five days, and then repeating the cycle. *See Uribe v. Webster*, Ariz.App.No. 1-CA-CV-12-0874, 2014 WL 47344 (Jan. 7, 2014), ¶3 (memorandum decision).

**{¶18}** On February 19, 2019, the magistrate issued an order clarifying some of the aspects of its 5-2-2-5 parenting order, and setting the matter for further review on April 26, 2019.

**{¶19}** On May 3, 2019, following the hearing, the magistrate issued an order stating "all testimony and evidence was concluded on all pending issues" and that all matters, were being taken under advisement, except that the contempt motion was being held in abeyance. The magistrate indicated that she would issue a decision by separate entry. Furthermore, the guardian ad litem was ordered to interview the minor child and file an updated report no later than May 10, 2019.

**{¶20}** The magistrate issued a decision on May 16, 2019, adopting appellant's proposed shared parenting plan (also a 5-2-2-5 format), with certain modifications. The magistrate then ordered a further hearing on June 17, 2019, on the issues of child support, health insurance, and contempt.

**{¶21}** Appellee objected thereto on May 28, 2019. The court subsequently issued a judgment entry ordering that the objection be heard by the juvenile court judge on July 29, 2019.

**{¶22}** On June 5, 2019, appellee filed a request for leave to provide "supplementary matters" to the magistrate at the hearing that had been scheduled for June 17, 2019. Appellant objected to this request via a motion filed on June 10, 2019. However, on June 11, 2019, the juvenile court issued an order effectively allowing additional matters to be presented to the magistrate at the June 17, 2019 hearing.

**{¶23}** Following the June 17, 2019 hearing, the magistrate issued a new decision June 21, 2019, changing the terms of the companionship schedule from what had been

ordered on May 16, 2019. The new terms were in pertinent part as follows: During the school year, T.P. was to primarily reside with appellee, with a mid-week overnight for appellant. Appellant was granted two consecutive weekends for visitation, with appellee to have the third weekend, and so on. However, summers were to be set up on an alternating-week equal schedule.

**{¶24}** On July 1, 2019, appellant filed an objection to the aforesaid magistrate's decision.

**{¶25}** On July 29, 2019, the juvenile court heard the oral arguments on the two objections, the first being appellee's objection to the May 16, 2019 magistrate's decision and the second being appellant's objection to the follow-up magistrate's decision of June 21, 2019, which had modified said May 16, 2019 decision.

**{¶26}** On August 8, 2019, the trial court issued a judgment entry ordering the shared parenting plan to be adopted with the modifications from the second magistrate's decision of June 21, 2019. The remaining issues of child support and contempt were ordered set for a hearing before the magistrate on August 19, 2019.[2]

**{¶27}** On August 28, 2019, appellant filed a notice of appeal. He herein raises the following sole Assignment of Error:

---

[2]　Generally, a juvenile court's order addressing legal custody of a minor child is not final and appealable if the order defers determination of child support to a later date. *See, e.g.,* *In re Burke*, 8th Dist. Cuyahoga No. 78982, 2002 WL 102960. However, in this instance, it appears based on additional review of the docket that the magistrate issued a decision on October 8, 2019 (subsequent to the within notice of appeal) addressing child support and denying appellant's motion for contempt. This decision was essentially adopted by the juvenile court via a judgment entry issued October 23, 2019, and said ruling was not appealed to this Court. We therefore conclude, *sua sponte*, that we have jurisdiction to proceed in the present appeal.

**{¶28}** "I. THE TRIAL COURT DECISION TO MODIFY THE MAY 16, 2019 MAGISTRATE'S DECISION AND ADOPT [THE] MAGISTRATE'S DECISION [OF] JUNE 21, 2019 IS WITHOUT ANY EVIDENTIARY BASIS AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I.

**{¶29}** In his sole Assignment of Error, appellant challenges the trial court's modified adoption of the magistrate's May 16, 2019 decision regarding shared parenting of T.P.

**{¶30}** Our review of a trial court's decision allocating parental rights and responsibilities is under an abuse of discretion standard. *Miller v. Miller* (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846. Furthermore, because custody issues are some of the most difficult and agonizing decisions a trial judge must make, he or she must have wide latitude in considering all the evidence. *Girdlestone v. Girdlestone*, 5th Dist. Stark No. 2016 CA 00019, 2016–Ohio–8073, ¶ 12, citing *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 418, 674 N.E.2d 1159. Similarly, when making its determinations in custody or visitation cases, the trial court, as the trier of fact, must be given wide latitude to consider all issues. *Heckel v. Heckel*, 12th Dist. Butler No. CA99–12–214, 2000 WL 1279171. Ultimately, parental rights and responsibilities are to be allocated based upon the paramount consideration of the best interest of the child. *Trent v. Trent,* 12th Dist. Preble No. CA 98–09–014, 1999 WL 298073.

**{¶31}** R.C. 3109.04(F)(1) provides a nonexclusive listing of relevant factors that a juvenile court shall consider in determining the best interest of a child for purposes of allocating parental rights and responsibilities for the care of the child. *Anderton v.*

*Hatfield*, 10th Dist. Franklin No. 07AP-198, 2007-Ohio-7139, ¶ 39. *See, also, Morris v. Pyles*, 7th Dist. Belmont No. 97 BA 43, 2001-Ohio-3204; R.C. 2151.23(F)(1).

**{¶32}** R.C. 3109.04(F)(1) states in pertinent as follows:

In determining the best interest of a child pursuant to this section, *** the court shall consider all relevant factors, including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

**{¶33}** In addition, R.C. 3019.04(F)(2) states:

In determining whether shared parenting is in the best interest of the children, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in division (F)(1) of this section, the factors enumerated in section 3119.23 of the Revised Code, and all of the following factors:

(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;

(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.

**{¶34}** In the case *sub judice*, the record before us contains the two transcripts of the magistrate's hearings of April 26, 2019 and June 17, 2019. The only witnesses at these hearings were appellant and appellee.

**{¶35}** The testimony from April 26, 2019 concentrated on the period of time from after the magistrate's decision of March 28, 2018, *supra*, to the date of the hearing. Tr. I at 2. We glean from this record that T.P. is a healthy child who participates in wrestling and baseball. Tr. I at 37. As of the April 26th hearing, T.P. had been "doing well"

academically, and his school had issued a progress letter showing improvement in his test results. Tr. I at 49. Appellant contended he had no problem getting the child to school. Tr. I at 9. Appellant further testified that his grandmother takes the child to school every Monday morning, due to appellant's work meetings in Marietta on Mondays. Tr. I at 9-10. Upon cross-examination, appellant stated that he exercised all of his visits. Tr. I at 21. On redirect examination at that hearing, appellant maintained that T.P. is properly fed, bathed and cared for at his home. Tr. I at 30. Appellee, in her direct testimony, stated her concerns regarding the shared parenting plan: "I think we are doing really good now, I just wish [appellant] would keep him when he is supposed to ***." Tr. I at 44. Appellee nonetheless had no concerns about doctor appointments for the child. Tr. I at 44. Furthermore, the parties, at least on some occasions, have been able to communicate and change dates to work for both of them. *See* Tr. I at 49.

**{¶36}** The testimony from the June 17, 2019 hearing included an incident on May 13, 2019 in which T.P.'s school called appellee to let her know the child was sick and should be picked up. Tr. II at 5. Because this occurred during appellant's parenting time (per the January 22, 2019 magistrate's order), appellee called appellant and then picked up the sick child. She returned the child to appellant's grandmother a couple of hours later. Tr. II at 7. On the next day, T.P. was sick again and the school called appellee, who proceeded to pick him up. Appellant at that time agreed appellee could keep T.P., as the child was already scheduled to have parenting time with appellee commencing at 6:00 p.m. anyway. Tr. II at 7-8. Appellee also testified to an exchange she had with appellant concerning appellant's response to the child's poor performance at a baseball game. Tr. II at 11.

**{¶37}** However, in the most recent guardian ad litem report, filed on May 10, 2019, Attorney Donovan Hill concluded that some of appellee's original concerns about appellant remained ongoing, although Hill conceded he had not been presented with any evidence that appellant "[had] begun engaging in *new* poor behaviors." GAL Report, May 10, 2019, at 2.

**{¶38}** The gist of appellant's position in the present appeal is that despite some of the positive results of the initial implementation of shared parenting in this matter per the magistrate's order of January 11, 2019, the court overemphasized or misinterpreted certain concerns about appellant's parenting of T.P., particularly his zealousness regarding the child's performance in sporting events, his level of support regarding the child's schoolwork, and his forfeiting of some of his visitation time and relying on his grandmother and other relatives to fill the void (including appellant's trip to Las Vegas in early March 2019 over a weekend on which he had the scheduled parenting time). Appellant thus maintains there was an insufficient basis to modify companionship, during the school year, away from the magistrate's original "5-2-2-5" standard schedule, particularly considering the limited evidence obtained at the June 17, 2019 hearing, which he urges actually demonstrates that the parties have shown a capacity for working school-related matters out under a full shared parenting plan.

**{¶39}** However, the mere fact that a court focuses on factors that "cut against" a parent's motion, instead of those that might have supported additional parenting time, does not equate to the decision being unreasonable, arbitrary, or unconscionable. *See Ross v. Ross*, 9th Dist. Summit No. 26106, 2012-Ohio-2175, ¶ 15. As may occur in any number of parenting disputes, we are confident in this case that both appellant and

appellee care greatly about the child's welfare and both believe they can provide for his optimal care. *See Jillian F. v. Curtis C.*, 5th Dist. Tuscarawas No. 2018 AP 04 0016, 2018-Ohio-5373, ¶ 35, citing *In re D.B.E.*, 5th Dist. Holmes No. 08 CA 8, 2009-Ohio-1396, 2009 WL 795206, ¶ 23. Nonetheless, under the present circumstances, upon review, we indulge in the presumption that the magistrate and judge duly considered the statutory "best interest" factors, and we hold the court's ultimate decision to put in place a modified shared parenting plan in lieu of a year-round plan does not constitute an abuse of discretion or compel us to attempt to substitute our judgment.

**{¶40}** Appellant's sole Assignment of Error is therefore overruled.

**{¶41}** For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, Tuscarawas County, Ohio, is hereby affirmed.

By: Wise, John, P. J.

Baldwin, J., and

Wise, Earle, J., concur.

JWW/d 01/31